GREAT NORTHERN RAILWAY COMPANY, Respondent, vs. McCORD, Appellant.

*October 4—November 15, 1910.*

*Judgment:* Res judicata: *Railroads: Condemnation of land: Wrongful occupancy: Damages: Foreign railroad companies: Statutes construed.*

1. A decision of the supreme court, in an action by a landowner against two railroad companies, one the lessee of the other, to enjoin them from using his land for railroad purposes, to the effect that they are trespassers upon the land and that the circuit court erred in permitting them to occupy the same before acquiring a right thereto by proper condemnation proceedings, is *res judicata* between the parties and binding upon such lessee even after it has acquired the title and franchises of its lessor by deed from the latter and has instituted new condemnation proceedings against the property in its own name.

2. In such case neither company acquired any claim or color of title to the premises under the order of the circuit court, and subsequent steps taken by the grantee to obtain a new certificate of convenience and necessity from the railroad commission and to condemn the land cannot, therefore, be treated as having been instituted to perfect a defective title, so as to entitle it to a stay of proceedings in the landowner's action to enjoin the further use of the premises, and to an order permitting it to continue its occupancy pending the condemnation proceedings, under the provisions of sec. 1852, Stats. (1898).

3. Where, after an action is begun by a landowner against a railroad company which has wrongfully taken possession of his land, to restrain the use of the land for railroad purposes and to recover damages for the trespass, the railroad company institutes condemnation proceedings against the land in question, the damages awarded such owner in the trespass action should not include those incident to any change in the premises caused by the grading of the roadbed or by other acts affecting the physical condition of the land, since such elements of damage must be taken into consideration in the condemnation proceedings.

4. The right of eminent domain cannot be exercised by foreign railroad companies unless expressly granted to them by law.

5. The omission from sec. 1845, R. S. 1878, of the words "formed under this act or organized under any law of this state," contained in sec. 13, ch. 119, Laws of 1872, and the further omission of the provisions of sec. 55 of the same act, are significant as indicating that the revised law was intended to embrace all railroads and to be of general application, and it is accordingly *held* that the power of eminent domain is conferred on all railroad corporations doing business in this state regardless of whether they are domestic or foreign organizations.

APPEAL from an order of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

The Eastern Railway Company of Minnesota, a corporation existing under the laws of Wisconsin, sought to condemn lands for an extension of its railroad. Among the lands sought to be condemned were lands of *Warren E. McCord* in the city of Superior. A certificate of convenience and necessity was issued by the railroad commission of Wisconsin. Upon appeal to this court from the order of the circuit court appointing commissioners to ascertain and appraise the compensation to be made to the owners of the real estate described in the above mentioned condemnation proceeding instituted by the Eastern Railway Company, the order was reversed, on the ground that the board of directors of the Eastern Railway Company had not passed a resolution designating the route of the proposed extension, and because the certificate of convenience and necessity issued to the railway company improperly granted the company the privilege of constructing a part only of the railroad found to be necessary.

In August, 1907, the Eastern Railway Company entered upon and began excavating on the lands of *Warren E. Mc-Cord* in the city of Superior, and on August 21, 1907, Lyman T. Powell, *Mr. McCord's* attorney and agent at Superior, learned of the entry and notified *Mr. McCord* at Portland, Oregon, thereof. On August 23, 1907, Mr. Powell was directed to proceed to have the railroad enjoined from further prosecution of the work. Upon learning on September 17, 1907, that the railway company purposed to lay its tracks upon these lands, Mr. Powell commenced an action to restrain the Eastern Railway Company and the *Great Northern Railway Company* from doing this work and from occupying the premises. The *Great Northern Railway Company* was made a defendant in this action because it had a long-time lease of the railroads of the Eastern Railway Company and was alleged to be under the same management. On October 5, 1907, the preliminary restraining order, which had been issued as to both of the defendants, was dissolved by the circuit court and the defendants were permitted to continue in possession of the plaintiff's premises upon condition that they give a bond in the sum of $20,000 to indemnify the plaintiff for his damages. On appeal to this court from this order, the order was reversed and the action remanded for further proceedings according to law.

After the case was remitted to the circuit court and was there called for trial, the petitioner herein, the *Great Northern Railway Company,* upon its petition and corroborating affidavits showing that under date of July 1, 1907, the Eastern Railway Company had made a deed of the whole of its franchises, railway property, appurtenances, and rights to the *Great Northern Railway Company,* the deed being delivered on October 11, 1907; that the petitioner had in February, 1909, instituted proceedings by petition asking condemnation of the premises which the Eastern Railway Company had sought to condemn for identical purposes, and for the appointment of commissioners for that purpose; and that the com-

missioners appointed on October 15, 1907, had appraised the compensation to be made to *Warren E. McCord* at $1,249 and that this amount had been paid into court, asked a stay of the proceedings in the action brought by the plaintiff, *Warren E. McCord,* and that it be given permission to continue in possession of the premises during the pendency of its condemnation proceedings.     Upon this showing the circuit court made an order staying all further proceedings in the action brought by *Warren E. McCord* against the Eastern Railway Company and the *Great Northern Railway Company* and permitted the *Great Northern Railway Company* to continue in possession of the lands of *Warren E. McCord* on condition of giving a bond in the sum of $5,000 to pay any damages suffered by *Warren E. McCord* by reason of the occupancy of his lands and on the further condition of the prompt prosecution of the condemnation proceedings.     This is an appeal from such order.

For the appellant there were briefs by *Luse, Powell & Luse,* and oral argument by *L. K. Luse.*

For the respondent there was a brief by *J. A. Murphy* and *W. M. Steele,* and oral argument by *Mr. Steele.*

SIEBECKER, J.     The appellant contends that the court erred by its order permitting the respondent, the *Great Northern Railway Company,* to occupy the premises of *Warren E. McCord,* the appellant, during the pendency of the proceeding instituted by it for the condemnation of a strip thereof to be used for railroad purposes, and that it was error to restrain the appellant from prosecuting his action against the railway companies to enjoin them from continuing in possession of the land and from using it for such railroad purposes during the pendency of the condemnation proceedings.     Upon an appeal to this court from an order in the action of *McCord v. Eastern R. Co.* and this respondent, reported in 136 Wis. 254, 116 N. W. 845, it was held that the complaint in the case

stated a good cause of action for an injunction, and that the circuit court erred in permitting the railroad companies to occupy said premises for railroad purposes before they had acquired any right thereto by a proper condemnation proceeding pursuant to the statutes, for the reason that under the facts and circumstances shown by the pleadings and affidavits then before the court it appeared that *Warren E. McCord* had given no express or tacit consent to such occupancy by the companies. The decision went upon the ground that any such permanent appropriation of land without the consent of the owner is a taking thereof in the constitutional sense, which is unauthorized in the law; and it was held that such unlawful entry would be restrained in equity, because the remedies available to the owner at law are less adequate, comprehensive, and efficient to the ends of justice and its prompt administration. It was therefore held that the plaintiff in that action was entitled to proceed with the prosecution of his suit, in which respondent had been made a defendant, upon the ground therein alleged that it then occupied this land as the lessee of the railroad owned by the other defendant, the Eastern Railway Company.

The questions thus decided upon that appeal are *res judicata* as to the respondent on this appeal. We can perceive no reason for holding on this appeal that the respondent, the *Great Northern Railway Company,* should not be bound by such former decision to the extent of the questions then presented and decided, unless, as it now contends, the situation is changed. This alleged change of situation is based on the showing to the court, before the making of the order now appealed from, that the deed of the Eastern Railway Company of October 11, 1907, conveying all of its railroad properties and transferring the possession thereof, included a right to occupy the lands, which was not embraced in the former decision, and that by obtaining a certificate of convenience and necessity for the construction of a railroad over the premises

which the Eastern Railway Company actually occupied, and by immediately thereafter prosecuting in the proper circuit court a condemnation proceeding to acquire the lands for such railroad purposes, the respondent acquired the right under sec. 1852, Stats. (1898), to remain in possession of the premises and to operate its railroad for a sufficient time to enable it to prosecute the condemnation proceeding to completion. This right is asserted under the provisions of sec. 1852, Stats. (1898), providing that if a railroad company has not acquired title to land upon which it has constructed any part of its roadbed or track, "or if at any time after an attempt to acquire title by purchase, eminent domain or otherwise it shall be found that the title thereby acquired is defective the corporation may proceed to acquire or perfect such title in the manner hereinbefore provided; and at any stage of such proceeding the court in which the same shall be pending or the judge thereof may authorize such corporation, if in possession, to continue in possession," and use the land for its purposes during the pendency of the proceedings upon compliance with the conditions as to indemnity there prescribed.    The argument is that under the facts of the case the respondent, as successor to the Eastern Railway Company, is in lawful possession of this strip of land, by reason of the fact that its predecessor took the necessary steps to acquire title thereto, although it failed to acquire a title on account of irregularities and defects in the certificate of convenience and necessity, and because the court awarded its grantor possession thereof during the pendency of the condemnation proceedings instituted by it.    It is undisputed that this possession was held illegal and wrongful by the decision of this court in the case of *McCord v. Eastern R. Co.* 136 Wis. 254, 116 N. W. 845.    It is there stated:

"The broad language of sec. 1852, so much relied upon by counsel for defendants, we think cannot be construed to mean that a railroad company may take and hold possession without the consent of the landowner and without first making or

tendering compensation. And it is manifest from the provisions of sec. 1850 that such was not the intention of the legislature. The latter section provides that after the making of the award the company may pay to the owners of the land taken or to the clerk of the court the amount of the award, and thereupon may enter upon, take, and use the land. This language seems to negative the idea that the land can be taken before compensation is made."

It was consequently held that the defendants' entry was unlawful and that the court erroneously permitted the railroad companies to remain in possession of the premises. It is obvious that neither the Eastern Railway Company nor the respondent acquired any claim or color of title to the premises under the circuit court's order which authorized possession pending the proceedings to condemn, for a railroad company has no right to go into possession of land which it wishes to condemn, before an award is made and payment of the amount awarded is made to the owner of the land or to the clerk of the court. The former decision of this court in the case of *McCord v. Eastern R. Co.* and the respondent, holding that their entry and continuance in possession under the court's order constituted a trespass, must be adhered to. The subsequent steps taken by the respondent to obtain a new certificate of convenience and necessity and the commencement of new condemnation proceedings cannot, therefore, be treated as instituted to perfect a defective title to land to which it had theretofore acquired any right by purchase or eminent domain. Under the facts disclosed the respondent and its grantor were wrongfully occupying this land without any justifiable claim thereto, and it cannot therefore be said that their possession of the premises is under an imperfect title as contemplated by sec. 1852, Stats. (1898). The court therefore erred in permitting the respondent to remain in possession and in restraining the appellant from prosecuting his action to enjoin the respondent from further trespass to his possession and for compensation for the loss sustained.

Since the respondent has instituted condemnation proceed-

ings against the lands in question and for the assessment of the owner's damages for such taking, it is manifest that the damages incident to any change in the premises caused by the respondent or its grantor by grading the roadway or by other acts which affected the physical condition of the land must be taken into consideration in determining the damages to be awarded the landowner in such proceeding. Under the circumstances, such elements of damage should not therefore be included in any award of damages in the appellant's trespass action. In that action the damages should be restricted to the loss occasioned by the invasion of the right of possession and which is not embraced in an award in the condemnation proceeding.

It is contended that the respondent is a foreign corporation organized under the laws of Minnesota and hence has no authority to exercise the right of eminent domain in this state. Confessedly, this right cannot be exercised by foreign corporations unless it be granted them by the law. Sec. 1845, Stats. (1898), provides:

"Any railroad corporation may acquire any real estate which it shall be authorized to take for the purpose of its organization in the manner hereinafter prescribed; and every provision for that purpose heretofore made in any special law or act of incorporation or amendment thereto is repealed."

Sec. 13, ch. 119, Laws of 1872, relating to railroads and the organization thereof, provided for the exercise of this right as follows:

"In case any railroad company formed under this act or organized under any law of this state, shall not have acquired any real estate required for the purposes of its incorporation, it shall have the right to acquire title to the same, in the manner and by the special proceedings prescribed in this act."

By sec. 55 of this chapter it was enacted:

"Sec. 55. All existing railroad corporations within this state shall respectively have and possess all the powers and

privileges contained in this act, and they shall be subject to all the duties and liabilities prescribed by this act."

The context of this section, read in connection with the provisions of sec. 13, shows that the legislature contemplated that all the powers and privileges contained in this act should be conferred on corporations other than those embraced in sec. 13, namely, those "formed under this act or organized under any law of this state." This must, therefore, have referred to corporations of foreign organization but doing business in this state. This remained the law until the adoption of the revised law contained in sec. 1845, R. S. 1878. The revisers' note states that the original section was "amended to give a certain expression to the abolition of special provisions," and cites cases. The omission of the words "formed under this act or organized under any law of this state," contained in sec. 13, and the omission of the provisions of sec. 55 altogether from sec. 1845, are significant as indicating that the revised law was intended to embrace all railroads and to be of general application, and that the provisions were not to be restricted to such corporations as were organized under the original act or under any other law of this state. The omissions and the phraseology of the new law manifest a purpose to so frame the revised law as to include within its provisions any railroad corporation. Such a purpose could only be accomplished by conferring the rights on all railroads doing business in this state, regardless of whether they were domestic or foreign organizations. Many of the different sections of our statutes, pertaining to the organization of railroads, the granting of rights and powers, and regulating the exercise of such rights and powers, have been cited to our attention by counsel for both parties as tending to show the legislative intent in the adoption of this amendment to the original statute, as incorporated in sec. 1845. An examination thereof affords us no satisfactory evidence showing the legislative intent respecting this matter. A study of the contexts of these

various provisions discloses that they harmonize with the apparent meaning of the provisions of sec. 1845, and therefore furnish no ground for restricting the natural meaning of the words employed and for not applying them in their usual significance and scope.    We are persuaded that the respondent, though a corporation organized in another state, has the right to exercise the right of eminent domain within this state for the purposes of its organization.

*By the Court.*—The order appealed from is reversed, and the proceeding remanded for further proceedings according to law.

MARSHALL and VINJE, JJ., took no part.