STATE EX REL. WISCONSIN TRUST COMPANY and others, Trustees, Respondents, vs. LEUCH, City Clerk, and others, Appellants.

*November 21, 1913—February 24, 1914.*

*Taxation: Exemptions: "Stock of any corporation in this state," etc.: Foreign corporations: Statutes: Construction.*

1. While it is a general rule that statutes exempting property from taxation are to be strictly construed, that rule comes into play only when ambiguity appears.
2. A foreign corporation having property and agents and carrying on business in this state is "in the state," within the meaning of the statute (sec. 1038, Stats.) classifying corporations for the purpose of exempting from taxation their shares of stock.
3. The words "any corporation," in sub. 9 of said sec. 1038, mean every corporation, foreign or domestic, limited only by the requirements that it be in the state and that its property be taxed in the same manner as that of individuals.

4. The legislation of a state is presumed to be regulatory of per·
   sons and property in that state unless otherwise expressed.
5. The provision of said sec. 1038, exempting "stock in any cor-
   poration in this state which is required to pay taxes upon its
   property in the same manner as individuals" (sub. 9), refers
   to its property in this state, and under it the shares of a for-
   eign corporation which carries on a large department store in
   the state, has a large amount of property here, and is licensed
   to do business in the state, are not subject to·assessment.

APPEAL from a judgment of the circuit court for Milwau-
kee county: OSCAR M. FRITZ, Circuit Judge.    *Affirmed.*

The appeal is from a judgment reversing upon *certiorari*
the action of the board of review of the city of Milwaukee re-
fusing to set aside certain assessments made against the re-
lators as trustees of the estate of Nathan Hamburger.

For the appellants there were briefs by *Daniel W. Hoan,*
city attorney, and *Garfield S. Canright,* assistant city attor-
ney, and oral argument by *Mr. Canright.*    They contended,
*inter alia,* that the words "in this state" in the tax-exemption
statute limited it to domestic corporations.    Corporations
have their residence and being and·are located only in the
states of their creation.    *Bank of Augusta v. Earle,* 13 Pet.
519; *Shaw v. Quincy M. Co.* 145 U. S. 444, 12 Sup. Ct.
935; *Galveston, H. & S. A. R. Co. v. Gonzales,* 151 U. S.
496, 14 Sup. Ct. 401; *St. Louis v. Wiggins F. Co.* 11 Wall.
423; *Comm. v. Standard Oil Co.* 101 Pa. St. 119; *Humph-
reys v. State,* 70 Ohio St. 67, 70 N. E. 957, 65 L. R. A. 776;
*Rhode Island H. T. Co. v. Tax Assessors,* 25 R. I. 355, 55
Atl. 877; *State v. Branin,* 23 N. J. Law, 484.    Foreign cor-
porations domiciled in Wisconsin are not required to pay
taxes in the same manner as individuals.    The statute means
individuals in this state.    These pay taxes on credits regard-
less of where they arise or whether due from residents of the
state or elsewhere.    Foreign corporations do not.    *State ex
rel. Dwinnell v. Gaylord,* 73 Wis. 316, 41 N. W. 521; *Buck
v. Beach,* 206 U. S. 392, 27 Sup. Ct. 712; *Foster-Cherry C.*

*Co. v. Caskey,* 66 Kan. 600, 72 Pac. 268; *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557.

For the respondents there was a brief by *Glicksman, Gold & Corrigan,* and oral argument by *Nathan Glicksman.*

The following opinion was filed December 9, 1913:

Timlin, J. "Gimbel Brothers, Incorporated," during the times herein mentioned, was a corporation created by the law of Pennsylvania, owning and operating a department store in Philadelphia, and another at Milwaukee, Wisconsin. It owned real estate and personal property in both cities and was licensed as a foreign corporation to do business in Wisconsin. It was the successor of a copartnership of which the deceased Hamburger was a member, and upon incorporation and transfer of the copartnership property to it its shares of stock were issued to the several partners, including 4,500 shares of preferred stock and 4,750 shares of common stock to the deceased Hamburger. On June 23, 1912, the board of review confirmed an assessment against the relators as trustees of the estate of Hamburger on the stock above mentioned for the years 1909, 1910, and 1911 as omitted property. By ch. 588, Laws of 1911, it was clear that there could be no assessment for 1912 and none was made. It was made to appear that said Hamburger was a resident of the city of Milwaukee until his death on September 15, 1910. He died testate, his will was admitted to probate in the county court of Milwaukee county, the executors therein named entered upon the discharge of their duties, paid the inheritance taxes and completed the administration of the estate, and on April 10, 1912, the estate was assigned, final account allowed, and the executors discharged, but the will created certain trusts, and 4,430 shares of the preferred stock and 4,650 shares of the common stock aforesaid belonging in the estate were assigned upon those trusts, and the relators are trustees thereof.

The principal question argued is whether the shares of stock were assessable to the shareholders as personal property. If they were not, all the assessments must fail. If these shares were assessable, then we meet the question whether the assessments for 1909 and 1910, omitted during the lifetime of Hamburger, and the assessment of 1911, omitted during the executorship, can be assessed against the trustees after the discharge of the executors, the executors and trustees being the same persons. The decision of the case, we think, must turn upon the construction to be given to sub. 9 of sec. 1038, Stats. 1898. That section reads: "The property in this section described is exempt from taxation, to wit: . . . (9) Stock in any corporation in this state which is required to pay taxes upon its property in the same manner as individuals." The learned counsel for the appellants contends that this relates only to corporations of this state or domestic corporations, and to him this seems almost too clear for discussion, while to the learned counsel for respondents it appears with equal clearness that the provision in question relates to all domestic corporations and to all foreign corporations which could be said to be "in the state."

It may not be amiss to glance at the statute law as it existed on this subject at the time the statute now in force was enacted. By sec. 14 of ch. 18, R. S. 1858, it was provided: "The owner or holder of stock in any incorporated company which is taxed on its capital shall not be taxed as an individual for such stock." While this was in force ch. 130, Laws of 1868, was enacted. This last was a sort of a codification of the law of assessments and a classification of exemptions, following sec. 4 of ch. 18, R. S. 1858, and adding other exemptions, among them sub. 9 as follows: "Stock in any corporation in this state which is required to pay taxes upon its property in the same manner as individuals." These two statutes might be thought to cover the same case, or else that the elder included the stock of all foreign corporations and

the latter narrowed this down either to domestic corporations or to the latter and some class of foreign corporations. The act of 1868 contained a section repealing all acts in conflict therewith. But in the compilation of 1871 made by Judge Taylor he has in his ch. 18, p. 392, sub. 9 of sec. 2, inserted the above quoted law of 1868, and in his sec. 46 at page 405 the above quoted section of the Revised Statutes of 1858. The act of 1868 became sub. 9 of sec. 1038 of the Revised Statutes of 1878.

In the preface to their notes the revisers of 1878 state that they attempted to consolidate statutes relating to the same subjects, "reconciling incongruous provisions and purging them of redundancy and tautology." This they seem to have done with ch. 48, relating to the assessment of taxes. Of sec. 1038 of that chapter they say it is composed of several acts, but chiefly sec. 2, ch. 130, Laws of 1868. By that revision all of the Revised Statutes of 1858 not incorporated therein was repealed, the repeal going into effect November 1, 1878. And ch. 130, Laws of 1868, was also repealed. There was no intention to make any radical change in the law by this revision, and the revision of 1878, for this reason, indicates an understanding that there was a conflict between these provisions and that the elder was repealed by the general repealing clause found in the act of 1868. Comparing the act of 1868 with the provisions quoted in the Revised Statutes of 1858, it will be observed that there is an obvious narrowing of the class of corporations included and a narrowing of the description of the taxation which will bring about the exemption of the shares, but otherwise no change. The words "taxed on its capital" clearly mean not its capital stock but its property. So the statutes are alike in this respect. "Taxed on its capital" and "required to pay taxes upon its property" are equivalent expressions and each refers to taxes laid by this state. But "any corporation in this state" is narrower than "any incorporated company," by the

qualifying words "in this state," and "taxes upon its property in the same manner as individuals" is narrower than "taxed upon its capital," by the qualifying words "in the same manner as individuals." So the effect of the exemption of 1868 is to narrow the class entitled to such exemption in two particulars, namely, the corporation must be one which is "in this state," and it is no longer sufficient that it be taxed upon its capital; it must be taxed "in the same manner as individuals." This creates two classes: one where the property thereof within this state is taxed in the same manner as individuals; the other where it is not. *State ex rel. Weller v. Hinkel,* 136 Wis. 66, 116 N. W. 639. How can we say that the intention was to limit the exemption only to domestic corporations? The statute says "any corporation." The distinction between foreign and domestic corporations is so obvious and the words commonly employed to express that distinction so familiar to all that it would seem that if it were the intention of the legislature to confine the act of 1868 to domestic corporations it would have employed these familiar terms.

It is argued by appellants' counsel that a foreign corporation could not be "in the state," and therefore such corporation is not included. Argumentative statements from some of the opinions of the supreme court of the United States delivered during the period of transcendentalism relative to this subject are quoted to support the conclusion that a foreign corporation could not be in a state other than the state of its creation. Such sayings, while worthy of great deference, are not in themselves law, and are often, when detached from the subject of discussion, quite misleading. For instance, TANEY, C. J., says in *Bank of Augusta v. Earle,* 13 Pet. 519: "It must dwell in the place of its creation and cannot migrate to another sovereignty." This and like sayings are made the basis of appellants' argument. Much depends upon what Chief Justice TANEY meant by the words "dwell" and "mi-

grate" and more upon whether he meant merely that the corporation could not do these things *ex proprio vigore.* It is an every-day experience that foreign corporations come into this state with the consent of and under the laws of this state and are licensed to exercise their principal corporate powers here, and such exercise is upheld as a legal and sufficient exercise. It is a mere *petitio principii* to say that such powers are exercised here by agents for the corporation. So are its powers always exercised within its home state. It may, it is true, if this state permit it, have an agent in this state with powers so narrow that he does not represent the corporation except for very limited purposes, but it is for this state law to say how far he will represent the foreign corporation as a condition of permitting the corporation to act at all. Indeed, the state, generally speaking, has power in all cases to declare what acts shall constitute an agency, and the person, natural or artificial, who thereafter does these acts thereby creates such agency. A foreign corporation can exist as a legal entity, *i. e.* a juristic person, only in the state of its creation, because when it gets outside the realm in which the law bestowing this quality upon it has force there is nothing to uphold its juristic personality. This weakness may be overcome in whole or in part either by comity of the other state or by express or implied legislative authority of such other state, and when the foreign corporation is recognized as a suitor in court, as a grantor in a conveyance, as having acquired a title by adverse possession, as having capacity to sue or be sued, and as responsible for its wrongs or breaches of contract, there is a recognition of juristic personality present in such state, consequently the foreign corporation is "in the state" for some purposes. That a foreign corporation may be "within" this state was decided in *Great Northern R. Co. v. McCord,* 143 Wis. 589, 128 N. W. 432.

Speaking of a foreign corporation and its relation to a state other than that of its origin in *Herndon v. C., R. I. &*

*P. R. Co.* 218 U. S. 135, 158, 30 Sup. Ct. 633, Mr. Justice DAY says: "The corporation was within the state." The statute under consideration, set forth in a foot-note at page 147, contains the words: "Every railroad corporation in this state," and it was not doubted that it applied to foreign corporations. The Fourteenth Amendment to the United States constitution prohibits the state from denying to any person within its jurisdiction the equal protection of the laws. Would not this apply to a licensed foreign corporation? *Southern R. Co. v. Greene,* 216 U. S. 400, 30 Sup. Ct. 287. And how could a licensed foreign corporation be within the jurisdiction of the state and not within the state? And see *Ex parte Schollenberger,* 96 U. S. 369, 375. See the language used in the following cases consistent only with the view that a corporation, although domiciled or resident in one state only, may be "in" many other states: *Relfe v. Rundle,* 103 U. S. 222, 225; *Hooper v. California,* 155 U. S. 648, 15 Sup. Ct. 207; *Canada S. R. Co. v. Gebhard,* 109 U. S. 527, 3 Sup. Ct. 363; *State ex rel. Drake v. Doyle,* 40 Wis. 175, 194.

In England it is held that a foreign corporation which sets up an office and carries on one of the principal parts of its business in that country will be considered a resident of England. *Haggin v. Comptoir D'Escompte,* L. R. 23 Q. B. D. 519, 522. In Illinois the following rule was announced: "While the citizenship of the corporation would depend upon the place of the law of its creation, its residence might, manifestly, upon the principle above stated, be in any state where it was, by comity, permitted to exercise its franchise." *Bank of N. A. v. C., D. & V. R. Co.* 82 Ill. 493, 496. For the purpose of applying the statute of limitations a foreign corporation is considered a resident of the state in which it has an office and does business although not the state of its creation. *Wall v. C. & N. W. R. Co.* 69 Iowa, 498, 29 N.

W. 427; *Connecticut Mut. L. Ins. Co. v. Duerson,* 28 Grat. 630.

We do not need to go so far as to find a residence in this state in the present case. If the corporation is "in this state" for any purpose, the appellants' argument, in so far as it is based upon the impossibility of such condition, falls to the ground. A foreign corporation having property and agents and carrying on business in this state is "in the state" within the meaning of a statute classifying corporations for the purpose of exempting from taxation their shares of stock. It is said that statutes exempting property from taxation are to be strictly construed, and this is no doubt correct. But, as said by Lieber, the first requisite is honest construction, and that consists in impartially reviewing the writing without any bias for or against any particular meaning and without any preconceived purpose to bring about a particular result. If, viewed in this way and applied to the subject in hand, there is no double or ambiguous aspect of the words employed, there is nothing to do but declare the meaning in the same words employed in the writing or in their ordinary equivalents. Strict construction comes into play only after ambiguity appears. *St. John's M. Acad. v. Edwards,* 143 Wis. 551, 128 N. W. 113. So here the words "any corporation" mean every corporation, and that expression is limited only by the requirements that it be "in the state" and that its property be taxed in the same manner as that of individuals. This leaves for consideration whether the words "its property" mean all its property within this state or its property wherever situated. The state is legislating with reference to its own affairs and its own system and manner of taxation. It is highly improbable that it was intended that any time any one of the forty-eight states makes a change in the manner of taxing the property of its corporations this should affect exemptions of property in Wisconsin. Our statute relates to

the manner of taxation in this state. *State ex rel. Weller v. Hinkel,* 136 Wis. 66, 116 N. W. 639. Therefore it must relate to the manner of taxing the property in this state belonging to the corporation. It must be borne in mind that domestic corporations and all other corporations "in ·the state" are by this statute grouped together and the same rule fixed for all of that·group. Besides, the legislation of a state is presumed to be regulatory of persons and property in that state unless otherwise expressed. Black, Interp. of Laws (2d ed.) pp. 91, 92, and cases cited.

The statute in question including *any* corporation must include a foreign corporation which is for the purpose of taxation in this·state. Indeed, that is the change made by the act of 1868. The exemption is limited to the shares of domestic corporations and to the shares of foreign corporations in·this state, not foreign corporations generally, and to these two classes only when their property in this state is by the laws of this state taxed in the same manner as ·individuals. The fact that the property of the foreign corporation is taxed outside of. this state is not sufficient to exempt the shares. *Ogden v. St. Joseph,* 90 Mo. 522, 3 S. W. 25; *Bradley v. Bauder,* 36 Ohio St. 28; *Sturges v. Carter,* 114 U. S. 511, 521, 5 Sup. Ct. 1014. The corporation in question carries on a large department store in this state and has upwards of $2,000,000 of its property in the state and is licensed to do business in the state, therefore a corporation in this state·; its property in this state is taxed in the same manner as individuals, hence its shares are not subject to assessment.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on February 24, 1914.