FALK, Respondent, vs. TAX COMMISSION, Appellant.   [Six cases.]

WURSTER, Respondent, vs. SAME, Appellant.

*February 8—April 30, 1935.*

The *Attorney General,* attorney, and *Walter L. Gold* of Milwaukee, special counsel, and *Morris Karon* of Milwaukee of counsel, for the appellant.

For the respondents there was a brief by *Quarles, Spence & Quarles* of Milwaukee and *Olin & Butler* of Madison, attorneys, and *Harry L. Butler* of Madison of counsel, and oral argument by *Mr. Butler* and *Mr. Joseph V. Quarles.*

The following opinion was filed March 5, 1935:

FRITZ, J.    In .the years 1922, 1923, and 1924, and for some years prior thereto, the respondents, with the exception that Herman W. Falk did not continue as such a stockholder after December 28, 1922, were stockholders of the Falk Company, a Wisconsin corporation.   For each of those years the Falk Company was assessed and paid its taxes upon such of its income as was taxable under ch. 71, Stats.   Shortly prior to May 17, 1921, the Falk Company sold and transferred substantially all of its assets to the Falk Corporation and the Falk Investment Company in exchange for the stock of those corporations.   On May 17, 1921, the stockholders of the Falk Company adopted a resolution for the dissolution of that corporation, and pursuant thereto, the dissolution thereof and the liquidation and distribution of its assets were effected during the years 1921 to 1924, inclusive. On May 17, 1921, it had an accumulation of considerable surplus because of undistributed profits realized out of income, on most of which it had been assessed for taxation under ch. 71 of the statutes, and on May 20, 1921, it distributed to its stockholders a liquidating dividend, which was payable in liberty bonds.   As the amount then distributed to each of the respondents was less than his investment as a stockholder of the Falk Company as of March 1, 1913, it was applied by the assessor of incomes of Milwaukee county

as a return of capital to the stockholder, and therefore held nonassessable. In the years 1922, 1923, and 1924, further liquidating dividends were paid by the Falk Company to the respondents in liberty bonds and stock of the Falk Corporation and the Falk Investment Company, which had been received by the Falk Company on the sale of its assets to those corporations. The receipt of those liquidating distributions was not reported by the respondents in their income reports for those years, which they filed for income taxation under ch. 71, Stats. However, in 1925 the assessor of incomes proposed an additional assessment against each of the respondents on account of those distributions in the years 1922 to 1924, inclusive; and, after extended consideration by the assessor and the State Tax Commission, and some compromises with the respondents, each of them was assessed and paid an additional tax on the amounts thus distributed to them in those years, less the statutory deduction under sec. 71.04 (4), Stats., of such part of the earnings as had theretofore been assessed against the Falk Company for income taxation. On June 7, 1929, the assessor again notified the respondents of proposed additional income assessments against them, as stockholders of the Falk Company, on account of the liquidating distributions received by them in 1922 to 1924, inclusive. The respondents filed protests against those proposed assessments, and applied for a hearing before the income tax board of review of Milwaukee county. That board, on December 21, 1929, upon a stipulation as to the facts, adopted a resolution canceling and nullifying the proposed assessments. Thereupon, the assessor appealed to the Tax Commission, which, on March 31, 1932, reversed the determination of the board of review, and affirmed and confirmed the proposed assessments. Respondents appealed from that determination by the Tax Commission to the circuit court, which ordered judgment reversing the Tax Commission's order, and annulling the proposed assessments. The Tax Commission appealed from that judgment.

The controversy in this action is in relation to the liquidating distributions made by the Falk Company to the respondents, in the years 1922 to 1924, inclusive, and the primary and controlling questions are whether those distributions were assessable as "dividends" under sec. 71.02 (2) (b), Stats. 1921, 1923, and, if so, whether they were deductible, under sec. 71.04 (4), Stats. 1921, 1923, as "dividends or income" received from stock in a corporation, the income of which had been assessed under ch. 71, Stats.

In 1922, 1923, and 1924, sub. (2) of sec. 71.02, Stats. (as amended by ch. 247, Laws of 1917), read (so far as here material) as follows:

"The term 'income,' as used in this act, shall include: . . . (b) all dividends derived from stocks . . . . provided, that the term 'dividends' as used in this section shall be held to mean any distribution made by a corporation . . . out of its earnings or profits accrued since January 1, 1911, and paid to its shareholders whether in cash or in stock of the corporation. . . ."

That language seems so plain and unambiguous that there is no occasion for resorting to such rules of construction as are necessary to determine the legislative intent when terms used in a statute are ambiguous or of doubtful application. As was said in *State ex rel. Wisconsin Trust Co. v. Leuch,* 156 Wis. 121, 129, 144 N. W. 290, in connection with holding that the rule that strict construction of statutes exempting property from taxation comes into play only after ambiguity appears,—

". . . The first requisite is honest construction, and that consists in impartially reviewing the writing without any bias for or against the particular meaning and without any preconceived purpose to bring about a particular result. If, viewed in this way and applied to the subject in hand, there is no double or ambiguous aspect of the words employed, there is nothing to do but declare the meaning in the same words employed in the writing or in their ordinary equivalents."

The obvious meaning of the term "all dividends," as used at the very outset in par. (b) of sub. (2) of sec. 71.02, Stats. 1921, 1923, is, in and of itself, so broad and comprehensive as to include not only such dividends as are paid by a going concern, in the ordinary course of its business, to its stockholders, but also all dividends distributed in liquidation. However, in addition, that that was the legislative intent is convincingly manifested by the use of the term "*any* distribution" in the express command in that subsection that the term "dividends," as there used, shall be held to mean "any distribution" which is "made by a corporation . . . out of its earnings," etc. That adjective "any," as there used in connection with the word "distribution," is, in the absence of a disclosed intent to limit its meaning, equivalent in the scope of its meaning to the word "every." *State ex rel. Wisconsin Trust Co. v. Leuch, supra; Juneau v. Tax Comm.* 184 Wis. 485, 488, 199 N. W. 63. Consequently, the unequivocal use by the legislature of the term "any distribution" in its command as to what "all dividends" shall be held to mean, compels the conclusion that, under sec. 71.02 (2), Stats. 1921, 1923, every distribution made by a corporation to its stockholders out of its earnings or profits accrued, since January 1, 1911, whether such distribution is made in the ordinary course of business as a continuing concern or whether it is made in liquidation, must be held to be a dividend within the meaning of that section, and as such is included within the term "income" as it is used in ch. 71, Stats.

Undoubtedly, one of the reasons for adding by ch. 247, Laws of 1917, the proviso to sec. 71.02 (2) (b), Stats. (formerly sec. 1087*m*—2, (2) (b) ), that the term "dividends" "shall be held to mean any distribution made by a corporation . . . out of its earnings or profits *accrued since January 1, 1911,*" etc., was to change the decisions in *Van Dyke v. Milwaukee,* 159 Wis. 460, 146 N. W. 812, 150 N. W. 509,

and *State ex rel. Pfister v. Widule,* 166 Wis. 48, 163 N. W. 641, that dividends constituted assessable income even though they were paid out of corporate earnings which had accrued prior to January 1, 1911. But if that had been the sole purpose of that 1917 amendment, it could have been accomplished by merely enacting that part of the amendment which limited the assessable dividends to such as were paid out of earnings or profits which accrued since January 1, 1911. Manifestly, if that had been the sole purpose of that amendment in 1917, it was not necessary at all to use such a broad term as "any distribution" in order to redefine the term "dividends" so as to limit its meaning to such dividends as were paid out of corporate earnings which had accrued since January 1, 1911; and it is therefore probable that, in then using that otherwise unnecessarily broad term, "any distribution," the legislature intended then to also definitely prescribe that the term "dividends" included any and every such distribution made by a corporation out of its earnings or profits which accrued since January 1, 1911.

On the other hand, there was no legislative declaration in this state that liquidating distributions made out of its earnings or profits by a corporation to its stockholders were not to be treated as dividends and included as such by a stockholder reporting his income, until the enactment by sec. 2, ch. 539, Laws of 1927, of par. 3 of sub. (2) (b), of sec. 71.02, Stats. 1927, which provides that—

"Amounts distributed in liquidation of a corporation shall be treated as payment in exchange for the stock, and the gain or loss to the distributee resulting from such exchange shall be determined under the provisions of this paragraph and section 71.02 (2) (d). . . ."

In thus providing that amounts distributed in liquidation of a corporation are to be treated as payments in exchange for the stock, and that the gain or loss to the distributee resulting from such exchange shall be determined under the

provisions of that paragraph and sec. 71.02 (2) (d) (which subjects to income taxation "all profits derived from the transaction of business or from the sale of real estate or other capital assets"), the legislature, in 1927, for the first time prescribed that amounts so distributed were to be treated for the purpose of income assessment as in a class separate and distinct from other corporate dividends as defined in sec. 71.02 (2) (b). As there was no occasion for any such legislative action at that time, unless it was then intended and necessary by such an enactment to change the method prescribed under the existing statutory provisions of reporting such distributions for income taxation, it is but reasonable to conclude that the legislature thereby, in 1927, intended to establish a new rule in respect to such distributions, and that, as it did not make that rule applicable to incomes received prior to 1926, it has no application to the distributions in question, which were received by the respondents prior to that year. *West v. Tax Comm.* 207 Wis. 557, 242 N. W. 165; *Straus v. Tax Comm.* 201 Wis. 470, 229 N. W. 546. On the other hand, the fact that, since the enactment of par. 3 of sub. (2) (b) of sec. 71.02, Stats., in 1927, amounts distributed in liquidation are to be treated as in a class separate and distinct from other corporate dividends, does not warrant now concluding, as a matter of hindsight suggested by that subsequent reclassification, that theretofore such distributions were not to be considered as included within the term "all dividends," which the legislature had prescribed "shall be held to mean *any* distribution made by a corporation . . . out of its earnings or profits," etc. The opinions in *Langstaff v. Lucas,* 9 Fed. (2d) 691; *Langstaff v. Lucas,* 13 Fed. (2d) 1022; *Hellmich v. Hellman,* 18 Fed. (2d) 239; and *Hellmich v. Hellman,* 276 U. S. 233, 236, 48 Sup. Ct. 244, are not necessarily to the contrary. In all of those opinions it is recognized that under the broad definition of the term "dividends," as used in sec. 201 (a) of the Federal

Revenue Act of 1918, 40 Stat. at L. 1059 (which is considered identical in substance with sec. 71.02 (2) (b), Wis. Stats.), such liquidating distributions would be included but for the fact that such distributions are the very transactions which are specifically provided for in sec. 201 (c) of the federal act, which in turn corresponds to the 1927 enactment of par. 3 of sec. 71.02 (2) (b), Wis. Stats.

It follows that the liquidating distributions in question were "dividends" which were included within the term "income," as those terms were defined in sec. 71.02 (2), Stats. 1921 to 1925, inclusive. On the other hand, likewise unambiguous in respect to the terms "dividends or incomes," is the following provision in sec. 71.04 (4), Stats. 1921 to 1925, inclusive, which allowed, as deductions to persons in reporting incomes for the purpose of taxation,—

"dividends or incomes received by any person from stocks or interest in any corporation, . . . the income of which shall have been assessed under the provisions of this act; provided that when only part of the income of any corporation, joint stock company or association shall have been assessed under this act only a corresponding part of the dividends or income received therefrom shall be deducted; . . ."

As the liquidating distributions in question were to be treated as dividends under sec. 71.02 (2) (b), Stats., and, as such, were to be reported for the purpose of taxation as income, as that term is used in ch. 71, Stats., there is no reason whatsoever, in the utter absence of any provision to the contrary in that chapter, for holding that those distributions were not to be included likewise as within the terms "dividends or incomes" which are used in sec. 71.04 (4), Stats. 1921 to 1923, inclusive, or that, although they were to be reported as such dividends, they were not deductible to the extent that the income of the Falk Company had been assessed for taxation under ch. 71, Stats. Until the enactment of ch. 539, Laws of 1927, the only exception under sec. 71.04

(4), Stats., in respect to the deduction of such dividends or income, was as to such dividends or income as were received from stock in a corporation, whose income had not been assessed under the act. Here again it is significant that until the amendment of that statute by ch. 539, Laws of 1927, there was no provision in sec. 71.04 (4), Stats., for any exception in respect to dividends received in liquidation. It was only when, in 1927, by the enactment of par. 3 to sub. (2) (b) of sec. 71.02, Stats., distributions made in liquidation were required by that paragraph to be treated as income in a class which was separate and distinct from income which was theretofore treated as dividends, that the dividend distributions made in liquidation were, by an amendment of sec. 4 of ch. 539, Laws of 1927, to sec. 71.04 (4), Stats., expressly excepted from the dividend or income deductions theretofore allowable under sec. 71.04 (4), Stats. 1921 to 1925, inclusive.

It is also contended on behalf of the Tax Commission that, under the rule recognized in *Witter v. Tax Comm.* 210 Wis. 207, 246 N. W. 318; *Paine v. Oshkosh,* 190 Wis. 69, 208 N. W. 790; and *State ex rel. Columbia C. Co v. Tax Comm.* 166 Wis. 369, 165 N. W. 382, the liquidating distributions received by the respondents were not deductible because they were made out of income of the Falk Company, which had not been previously assessed against it under ch. 71, Stats. That contention apparently assumes the facts to be contrary to the statement made by the commission in its decision, dated March 31, 1932, that "the greater part" of the surplus which the Falk Company had on May 17, 1921, "represented an accumulation of earnings upon which Wisconsin income taxes had been paid." It was out of that surplus that the liquidating distributions in question were made by the Falk Company directly to the respondents as its stockholders. If that statement is correct, then in so far as the liquidating dividends were distributed by the Falk Company

directly to the respondents out of that "greater part" of its surplus, and in so far as that corporation had been assessed for income taxes, the distributions were not affected by the rule recognized in the *Witter* and other cases last cited, but were clearly deductible under sec. 71.04˙ (4), Stats. On the other hand, in so far as the amounts so received by each of the respondents were distributions made by the Falk Company out of the earnings in excess of those on which it had been assessed, and those amounts were in excess of the cost of the respective investments of the respondents in the Falk Company stock, they were subject to assessment, and apparently constituted the basis for the additional assessments against the respondents, which were made on account of the liquidating distributions in 1922, 1923, and 1924, and on account of which they paid additional income taxes in 1925. Consequently, in so far as those liquidating distributions were made out of that "greater part" of the Falk Company's surplus, on which it had paid state income taxes, the respondents were entitled to have the deductions, which they claim in this action, allowed, as was done in the first instance, by the assessor of incomes with the approval of the Tax Commission, in 1925, when those officials rightly allowed those deductions before assessing the additional tax, which was then paid by the respondents.

As the additional assessments in question were unauthorized in law, the circuit court's judgment reversing and canceling the Tax Commission's order of March 31, 1932, and annulling those assessments, must be affirmed.

*By the Court.*—Judgments affirmed.

A motion for a rehearing was denied, without costs, on April 30, 1935.