H. SAMUELS COMPANY, INC., Respondent, v. DEPARTMENT OF REVENUE, Appellant.

*No. 138 (1974). Argued November 26, 1975.—*
*Decided December 19, 1975.*
(Also reported in 236 N. W. 2d 250.)

For the appellant the cause was argued by *E. Weston Wood*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

For the respondent there was a joint brief by *La Follette, Sinykin, Anderson & Abrahamson*, attorneys, and *Shirley S. Abrahamson* of counsel, all of Madison, and *Gould, Reichert & Strauss*, attorneys, and *Howard Gould* and *David Reichert* of counsel, all of Cincinnati, Ohio, with oral argument by *Shirley S. Abrahamson* and *Howard Gould.*

CONNOR T. HANSEN, J. The facts are not in dispute. The general sales and use tax became effective on September 1, 1969, replacing the selective sales tax. Under the new procedure, everything is taxable unless

specifically exempted. Sec. 77.54, Stats., contains the following exemption:

"77.54 **General exemptions.** There are exempted from the taxes imposed by this subchapter:

" . . .

"(6) The gross receipts from the sale of and the storage, use or other consumption of:

"(a) Machines and specific processing equipment and repair parts or replacements thereof, exclusively and directly used by a manufacturer in manufacturing tangible personal property."

The definition of the term "manufacturing" is contained in sec. 77.51, Stats.:

"(27) For purposes of s. 77.54 (6) (a) 'manufacturing' is the production by machinery of a new article with a different form, use and name from existing materials by a process popularly regarded as manufacturing."

The department determined that the taxpayer was not entitled to the exemption provided by sec. 77.54 (6) (a), Stats., because the business in which it is engaged is not within the statutory definition of "manufacturing." As a result of this determination, additional taxes in the amount of $8,655.52, were assessed against the taxpayer.

The taxpayer petitioned the Wisconsin tax appeals commission for reversal of the determination. Hearing was held before the commission which produced the following evidence.

The taxpayer is engaged in the business of processing scrap metal. He has two sites of operation, one located in Portage, the other in Madison. The raw material used in his operations consists of waste metals such as old appliances, farm and factory machinery, demolished bridges, reinforcing bars, pipes, plumbing fixtures, old railroad freight cars, factory scrap and rejected parts, auto hulks, and ship hulls. His process consists of transforming these waste metals into prepared grades of iron and steel suitable for use in the foundries, mills and

smelters of his customers. The process involves elimination of all nonferrous material, increasing density, elimination of impurities, composition of the finished material into the appropriate metallurgical and chemical tolerances, and conformation of the material to the size and form required by the customers. Following the completion of the process, the consuming steel mills, foundries or smelters charge the purchased product directly into steel-making furnaces.

The taxpayer produces more than 30 grades of ferrous metals, designated by such terminology as "No. 1 heavy melting steel," "No. 2 heavy melting steel," "No. 2 bundles," and different grades of specialty items. At no point in the process are new elements "added" to the raw material. Prepared grades of iron and steel scrap, such as those produced by the taxpayer, are sold on a per-ton basis, and the prevailing geographical area prices for each grade are quoted daily in national trade publications including the Wall Street Journal and the American Metal Market, and weekly in Iron Age, and the Waste Trade Journal. Specifications for each grade are apparently very rigid, since a variation can result in large monetary losses for customers and such specifications have been approved and published by federal government agencies including the Bureau of Mines, the United States Department of Commerce and the Offices of Price Administration and Price Stabilization. The industry itself furnishes statistical information on consumption by grades, prices and specifications, which are utilized by customers of scrap iron and steel processors.

The taxpayer uses heavy machinery in processing the scrap metal into prepared grades. This equipment includes hydraulic shears, hydraulic presses, hammermills, fragmentizers, shredders, ball drops, acetylene torches, briquetters, metal separators, cast washers, balers, and sweat furnaces. As an individual piece of metal may weigh several tons, assembly line movement through

various stages of the process is facilitated by the use of overhead cranes, crawler cranes, conveyor belts, and magnets.

At the hearing before the commission, the taxpayer presented several witnesses who testified with respect to the process described above. The chief metallurgist for a large Wisconsin foundry testified that the foundry did not purchase "scrap" metal but only graded metal, prepared to specification, from which undesirable alloys have been eliminated. He further stated that the material which arrived in the scrap iron yards was different from the processed product purchased by the foundry; otherwise it would be foolhardy for the foundry to purchase it, because the foundry would end up with an unsalable product.

The taxpayers' next witness, an assistant professor at the University of Wisconsin Graduate School of Business, was called for the purpose of analyzing the various examples of manufacturers and nonmanufacturers, as classified by the department in its Technical Information Memorandum (TIM) S–31, according to any common characteristics these specified examples might possess.

TIM S–31 gives departmental guidelines for classification of businesses as manufacturing or nonmanufacturing. It opens with a general definition:

"Manufacturing consists of an operation at a fixed location complete in itself, or one of a series of operations each at a fixed location, whereby, through the application of machines to tangible personal property a new article of tangible personal property with a different form, use and name is produced."

By way of illustration, the following businesses, among others, are listed as ordinarily engaging in "manufacturing": Bakeries, chemical processing plants, creameries, dairies, flour and feed mills, food processing plants—canning and freezing; foundries, meat packing and processing plants, and sawmills.

By way of illustration, the following businesses, among others, are listed as nonmanufacturers: Farming, trucking, hotels, logging, mining, real property construction activities, repair services, sand and gravel pit operators, and tire retreading.

The witness reduced the list to four types of manufacturing: aggregative (many inputs, few or single output; example—television set); disaggregative (few inputs, many outputs; example—refining, dairy operations); fabrication (taking an item and making it into an item with a different purpose and form; example—punching out of parts from sheet metal); processing (example—canning and freezing of food). The nonmanufacturing businesses were reduced to the categories of agriculture, extractive operations, transport, service, repair, entertainment and harvesting. In his opinion, the various activities of the taxpayer's operation corresponded more closely with those of businesses listed as illustrative of manufacturers.

A third witness, a consultant metallurgist, testified that taxpayer's operation is the first step in the production of steel, that the term "scrap" was outdated, loose nomenclature and that the product purchased by the taxpayer's customers should be referred to as secondary metal recovered from scrap.

The tax commission affirmed the determination of the department. The commission found as facts that:

"19. The petitioner did not produce a new article with a different form, use and name from existing materials.
"20. The petitioner's process is not popularly regarded as manufacturing."

The commission determined, as conclusions of law, that:

"1. During the period involved herein the petitioner was not engaged in manufacturing as that term is defined in Section 77.51 (27), Wisconsin Statutes.

"2. The petitioner is not entitled to the manufacturing exemption provided for in Section 77.54 (6) (a), Wisconsin Statutes."

The trial court reversed the determination of the commission, finding that the issue involved a question of law, and that the taxpayer's operations were within the statutory definition of "manufacturing." We agree.

In our opinion this case resolves itself to two issues:

1. What is the appropriate scope of review?

2. Whether the taxpayer is engaged in "manufacturing" as defined by sec. 77.51 (27), Stats., and thus entitled to the sales and use tax exemption provided in sec. 77.54 (6) (a)?

*Scope of review.*

Sec. 227.20, Stats., provides, in pertinent part, as follows:

"(1) . . . The court may affirm the decision of the agency, or may reverse or modify it if the substantial rights of the appellant have been prejudiced as a result of the administrative findings, inferences, conclusions or decisions being:

". . .

"(b) In excess of the statutory authority or jurisdiction of the agency, or affected by other error of law; or

". . .

"(d) Unsupported by substantial evidence in view of the entire record as submitted; or

"(e) Arbitrary or capricious.

"(2) Upon such review due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it. . . ."

The issue is the application of the statutory definition of the term "manufacturing" to the undisputed facts.

In *Abendroth v. ILHR Department* (1975), 69 Wis. 2d 754, 233 N. W. 2d 343, this court was called upon to

determine whether ground employees were eligible for unemployment compensation by reason of a pilots' strike. The issue concerned whether the strike took place "in the establishment in which (the employee) is or was employed," sec. 108.04 (10), Stats. The facts were stipulated, and it was held that the question involved an issue of law:

"... Factual findings of the department, in the absence of fraud, must be accepted as conclusive. But here the material facts were stipulated and not in dispute. The issue as to the application of the term, 'establishment,' to the factual situation presented here became a question of law. As this court has said, '... the commission cannot find that two plants constitute one *establishment* when under any reasonable interpretation of the statute this is not the case.' This is not a situation where conflicting inferences can be drawn from the evidence. We agree with the trial court that here 'as a matter of law' means no other factual finding could be reasonably drawn from the evidentiary facts stipulated and undisputed on this record. ..." *Abendroth v. ILHR Department, supra,* pages 765, 766.

While in the case at bar, the facts are not stipulated, nevertheless, no dispute exists in regard to the material facts relating to the actual operation of the taxpayer's business. Only the conclusion based on the facts is in dispute. It is true that the department found, as fact, that the taxpayer does not produce a new article with a different form, use and name from existing materials and that the taxpayer's process is not popularly regarded as manufacturing. However, these findings of fact are no more than restatements of the statutory definition of "manufacturing;" in other words, they are simply conclusions based on undisputed facts. *See also: Pabst v. Department of Taxation* (1963), 19 Wis. 2d 313, 120 N. W. 2d 77. Since the issue here involves only matters of law, the trial court committed no error in substituting its judgment for that of the de-

partment, and this court may affirm the trial court on that point, or review the record *ab initio* and substitute its own judgment for that of the commission. *Engineers & Scientists v. Milwaukee* (1968), 38 Wis. 2d 550, 554, 157 N. W. 2d 572; *Teledyne Industries, Inc. v. Milwaukee* (1974), 65 Wis. 2d 557, 564, 565, 223 N. W. 2d 586. In the case now before us, we affirm the judgment of the trial court.

*Status of taxpayer's operation.*

The statutory definition of "manufacturing" is "the production by machinery of a new article with a different form, use and name from existing materials by a process popularly regarded as manufacturing," sec. 77.51 (27), Stats.

Our attention has been directed to other jurisdictions which have considered the issue of whether iron and metal processors are "manufacturers."[1] We find these authorities helpful to the extent that they illustrate possible approaches to the solution of the problem when courts are called upon to construe the term "manufacturer." In *Sitkin's, supra,* and *Evatt, supra,* the courts emphasized the nature of the operation as shown by the facts, with reference to the statutory language. In *Deitch Co., supra,* and *Tax Comm., supra,* no statutory definition was available. There the courts relied upon prior judicial construction and dictionary definitions.

The Wisconsin legislature has given a definition to the term "manufacturing" in sec. 77.51 (27), Stats. Therefore, it becomes necessary to apply the statutory definition to the undisputed facts of this case. It is true that

[1] *Baltimore v. Tax Comm.* (1931), 161 Md. 234, 155 Atl. 739; *Iron & Steel Co. v. Evatt* (1941), 139 Ohio St. 113, 38 N. E. 2d 585, 591; *Commonwealth v. Sitkin's Junk Co.* (1963), 412 Pa. 132, 194 Atl. 2d 199, 201; and *Commonwealth v. Deitch Co.* (1972), 449 Pa. 88, 295 Atl. 2d 834.

the raw material utilized by the taxpayer is denominated "scrap" metal and that the finished material is also at times referred to as "scrap metal." However, the uncontroverted testimony of one witness is that this terminology is loose, inexact and outdated in view of the complexity of the operation itself and of the steel production industry of which it is a part. It is undisputed that the finished item is produced "by machinery." Also on occasion certain materials require the use of chemicals, and others heat treatment, before they can be made available as various types of ferrous metals suitable for the different uses in foundries. Prior to this process the materials were unusable for foundry purposes. The result is a "new article with a different form, use and name from existing materials." There is no statutory requirement that anything be added to the raw material in order for it to come within the scope of the exemption. The form of the finished item is certainly different from that of the materials received by taxpayer, such as discarded refrigerators, automobile hulks and wrecked bridges. The use to which it is put when it is sold is different from that to which the material could be put when it was acquired by the taxpayer. The testimony before the tax commission showed that the taxpayer's customers would have no use for the raw material as it is received by the taxpayer. Finally, the items produced by the taxpayer have specific designations, or "names," different from those identifying the materials received, which are used in trade publications for price quotations, as well as by government and industry for development of specifications and by taxpayer's customers for specification and ordering purposes.

Sec. 77.51 (27), Stats., also provides that the article produced must be the result of a "process popularly regarded as manufacturing." This phrase can only be applied with reference to the opinions of those conversant

with the subject matter involved. The witnesses familiar with the industry who testified before the commission stated that, in their opinion, the taxpayer was engaged in the manufacturing business. The department contends that the phrase should be applied according to the view of the operation taken by the "man on the street." However, no effort was made to show how "the man on the street" views the taxpayer's operation. Moreover, we are of the opinion that rational decisions could not be reached using such an approach to determine whether or not an enterprise constituted manufacturing within the definition of sec. 77.51 (27), Stats.

It is our opinion that the judgment of the trial court should be affirmed.

*By the Court.*—Judgment affirmed.