DEPARTMENT OF REVENUE, Petitioner-Respondent, v. BAILEY-BOHRMAN STEEL CORPORATION, Appellant.

Supreme Court

*No. 77–526. Argued January 9, 1980.—Decided February 7, 1980.*
(Also reported in 287 N.W.2d 715.)

For the appellant there were briefs by *Richard R. Teschner, Steven R. Duback* and *Quarles & Brady* of

Milwaukee, with oral argument by *Messrs. Teschner* and *Duback.*

For the respondent the cause was argued by *John J. Glinski,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J. The only question on this appeal is whether the Bailey-Bohrman Steel Corporation was engaged in manufacturing as defined in sec. 77.51(27),[1] Stats., and is therefore exempt from use taxes under the provisions of sec. 77.54(6)(a).[2] We conclude that, under these statutes and in light of the undisputed facts, the machinery used by the taxpayer, Bailey-Bohrman Steel Corporation, was exempt from the Wisconsin use tax. Accordingly, we reverse the judgment of the trial court.

This litigation arises out of an assessment of use taxes levied upon the taxpayer for the period commencing on December 1, 1972, and ending on September 30, 1974. Following the levy by the Wisconsin Department of Revenue, the taxpayer petitioned for a redetermination of the tax. That petition was denied. The Department's action was reversed by the Wisconsin Tax Appeals Commission on April 27, 1977. Subsequently, pursuant to the provisions of ch. 227, Stats., the Department commenced an action in the circuit court for Dane county to review the decision of the Tax Appeals Commission that Bailey-Bohrman was exempt from use taxes. The cir-

---

[1] "77.51 . . . (27) For purposes of s. 77.54(6)(a) 'manufacturing' is the production by machinery of a new article with a different form, use and name from existing materials by a process popularly regarded as manufacturing."

[2] "77.54 **General exemptions.** There are exempted from the taxes imposed by this subchapter:

"(6) The gross receipts from the sale of and the storage, use or other consumption of:

"(a) Machines and specific processing equipment and repair parts or replacements thereof, exclusively and directly used by a manufacturer in manufacturing tangible personal property."

cuit reversed the Commission's order of nontaxability and held that the taxpayer was not a manufacturer. A judgment ordering Bailey-Bohrman to pay the use tax was entered, and it is from that judgment that the taxpayer has appealed to this court.

Bailey-Bohrman advertised itself as an independent "steel service center and 'Processor.' " Its claim for exemption is based upon the assertion that it is a "manufacturer" as that term is defined in sec. 77.51(27), Stats.

The taxpayer's business essentially consists of purchasing large rolls of hot rolled coiled steel and cutting the steel into narrower widths by the use of the machinery whose tax status is in question on this appeal. The record shows that the taxpayer purchases hot rolled sheets of steel stock having a width of not more than 48 inches and a thickness of less than one-half inch. Each of these rolls or coils of steel weighs approximately 15 tons.

The first step in the process involves lifting the coils by crane onto a line, where they are unrolled on a decoiler. This decoiled or flattened steel is then conveyed by rollers through a slitter, which consists of two rotary knives, adjusted to accord with the eventual width of steel desired. This machine also trims off the rough outside edge of the steel sheet. Oil is sometimes added during the cutting operation upon a customer's request or because it facilitates cutting by acting as a lubricant. After the steel is cut into narrower widths, the strips are recoiled, lifted off the line, tagged with a customer's part number, and made ready for shipment to customers. The cutting is generally done in accordance with specific customer requests, and the width is cut to conform to the use to be made of it by the customer. The only thing the taxpayer does in addition to cutting the steel into the narrower widths is to occasionally cut the length of the coil in half. The taxpayer's plant consists of the large rollers, cutting devices, and the cranes. The cranes

are used for handling the original hot rolled coils and the steel which has been split and recoiled in accordance with the customer's order.

The Commission found, and the Department concedes, that the large coils of hot rolled steel stock have no practical use prior to Bailey-Bohrman's splitting them into the desired width. The narrower widths are specified by the taxpayer's customers in order that the steel can be fed into the presses or other machinery at a customer's plant. The steel is tailored by the taxpayer for a particular succeeding manufacturing step in a customer's operation. Almost all of the cut steel is tagged with a part number conforming to the customer's intended use.

After processing by the taxpayer, the steel has a different dimension and configuration than it had when it came from the steel mill. However, after being cut, the narrower strips are recoiled into rolls resembling the original uncut roll of steel. The taxpayer does not press, stamp, or in any way change the thickness of the steel. Ordinarily, the length of the steel strip is left unchanged. The taxpayer's president, in response to a question, stated that he would categorize the operation as "slitting steel."

Because these facts are undisputed, whether or not the taxpayer is a manufacturer poses only a question of law. *Department of Revenue v. Sterling Custom Homes,* 91 Wis.2d 675, 677, 283 N.W.2d 573 (1979). Where, as here, the material facts are undisputed and only a question of law is presented, this court may review the record *ab initio* and substitute its own conclusion for that of the Tax Appeals Commission or of the trial court. *H. Samuels Co., Inc. v. Department of Revenue,* 70 Wis.2d 1076, 1083, 236 N.W.2d 250 (1975). The Department asserts the familiar rule that one who seeks to have property exempted from taxation must show that it falls within the terms of an exemption statute.

That rule, derived from a long series of cases, was restated in *Engineers & Scientists of Milwaukee, Inc. v. City of Milwaukee,* 38 Wis.2d 550, 157 N.W.2d 572 (1968):

> " 'Statutes exempting property from taxation are to be strictly construed and all doubts are resolved in favor of its taxability. To be entitled to tax exemption the taxpayer must bring himself within the exact terms of the exemption statute.' " (at 553) *Accord: Ramrod, Inc. v. Department of Revenue,* 64 Wis.2d 499, 219 N.W. 2d 604 (1974).

This rule of construction is applicable, however, only where the statutory provision is ambiguous. *State ex rel. Wisconsin Trust Co. v. Leuch,* 156 Wis. 121, 129, 144 N.W. 290 (1914). There is no ambiguity in secs. 77.51(27) or 77.54(6)(a), Stats. The exemption for manufacturers is specific and unambiguous. The term, "manufacturing," is defined in detail by sec. 77.51(27). Moreover, even if the statutory provision were ambiguous, as we have pointed out in *Columbia Hospital Asso. v. Milwaukee,* 35 Wis.2d 660, 668, 151 N.W.2d 750 (1967):

> "[A] strict construction is nonetheless a construction, and an exemption statute need not be given an unreasonable construction or the narrowest possible construction."

That case went on to point out that strict construction was applicable only "where the meaning of the language expressing the objective intent of the legislature is doubtful." (at 668)

In this case, the objective intent of the language is clear. Sec. 77.51(27), Stats., demonstrates the objective intent of the legislature to grant an exemption to those who use machinery in the course of manufacturing. A strict construction is inappropriate in the present case.

The only question is one of law—whether the undisputed facts revealed in this record satisfy the objective standards for exemption detailed in sec. 77.51(27). The six objective elements set forth therein require that, for the exemption to apply, there must be production by machinery, of a new article, with a different form, with a different use, with a different name, and by a process popularly regarded as manufacturing. The Department of Revenue does not dispute that the taxpayer used machinery, that the split steel had a different use from the uncut steel, and that the process is popularly regarded as manufacturing. The Commission found that all of the elements of the definition were satisfied. The circuit court, however, set aside the Commission's finding that the taxpayer produced "a new article with a different form," and it also found it to be "debatable whether there has been a change in name within the meaning of the statute."

The Department asserts that the taxpayer's machinery is not exempt because the process does not result in a new article with a different form and name. The Department contends that a new article is not produced because the material before the taxpayer's processing is coiled steel and after processing it remains coiled steel. The Department also asserts that the only change in the steel by the taxpayer's processing is a change in width and occasionally a change in length when the original coil length is cut in half. Additionally, it argues that the eventual product does not have a significantly different name because, prior to processing, the steel is referred to as "hot rolled coiled steel" and afterwards is called "coiled steel."

We disagree with each of these contentions. It must be acknowledged, of course, that the chemical, metallurgical, and physical characteristics of the steel is unchanged by

the taxpayer's processing; but the fact that there has been no change of that kind does not mean that the statutory criteria are unsatisfied. The processing by the taxpayer converts a roll of steel, which is essentially unusable by the taxpayer's customers, into an article which can be utilized in further production processes. The testimony was undisputed that the original 15-ton coiled steel roll had no known use before being slit into desired widths. The processing converts the rolled steel into a new article. Although that new article possesses a number of the characteristics of the original one, the slitting process creates a new and usable article that did not exist before.

We also find it difficult to accept the Department's argument that the original material did not assume a different form as a result of the processing. The "American Heritage Dictionary of the English Language" (1970) gives as synonyms for the word, "form," "figure, outline, shape, configuration, contour, profile." While it is true that the original material is a coiled roll of steel and the end product is also a coiled roll of steel, the shape, outline, configuration, and weight of the cut steel is different from that of the uncut steel. The steel in its rolled form may be shorter than the original material used and, in any event, is narrower. The shape of the steel is altered. It begs the question to conclude that the form is not different merely because the initial material is coiled and so is the end product. It is clear from the record that the coiling process is performed in either case only for the purpose of facilitating transportation and handling. The steel emerges from the process in a different form. "Form" refers to contours and dimensions and is not, properly speaking, a characteristic of the material of which an object is composed. Nor is form necessarily related to physical or chemical composition.

The trial court said, "It is debatable whether there has been a change in name within the meaning of the statute." We agree that this is a close question. Before being processed, the steel is referred to as "hot rolled coiled steel," and afterwards it is called "coiled steel" or "slit and recoiled strip." The record indicates that these are words of art used in the steel and steel-fabricating industry and have different meanings. To satisfy the statute, the change in name must be attributable to a change in the nature, purpose, and function of the article. We conclude that the record demonstrates that the change in name is attributable to those factors.

We are not persuaded, however, by the taxpayer's argument that a change in name results merely from labeling the end product with the part number designated by the customer. If that were true, identical split or cut rolls of steel sent to different customers would have different names. It could not have been the intention of the legislature to predicate a change in an article's name upon so fortuitous a circumstance. However, the generic name given to the processed steel stems from the fact that the original wide strip of steel has been substantially altered by having rough exterior edges removed and by being cut into a form which could be utilized in further manufacturing steps. The name in trade usage indicates that the article produced is different from hot rolled coiled steel as it comes from the steel mill. We accordingly conclude that the end product of the Bailey-Bohrman Steel Corporation is the result of production by machinery by a process popularly regarded as manufacturing of a new article with a different form and with a different name.

We should also point out that the description of the taxpayer's operation, both that supplied by witnesses and the photographs placed in evidence, indicates that its procedures seem more like manufacturing than non-

manufacturing. It is significant that all of the witnesses at the Commission hearing testified that the taxpayer was engaged in manufacturing. Each of these witnesses was qualified by being conversant with manufacturing processes or with the processes utilized in the steel business. We stated in *H. Samuels Co. v. Department of Revenue,* 70 Wis.2d 1076, 236 N.W.2d 250 (1975),[3] that determining whether a process is popularly regarded as manufacturing is dependent upon the opinion of those conversant with the particular business. These opinions by qualified experts familiar with the use of steel in its various forms were highly probative of the general conclusion that Bailey-Bohrman's operations are popularly regarded as manufacturing.

Additionally, we are satisfied that the Department of Revenue's technical information memorandum (T.I.M. S–31) dated November 10, 1969, subsequently published as Wis. Admin. Code, TAX 11.39, shows that the taxpayer's activities are comparable to those businesses which the Department has heretofore classified as manufacturers and are not comparable to those classified as nonmanufacturers. For example, the following businesses, among others, are listed as being engaged in manufacturing: Bakeries, chemical processing plants, creameries, dairies, flour and feed mills, food processing plants-canning and freezing, foundries, meat packing and meat processing plants, and sawmills. Typical of those listed as nonmanufacturers are: Farming, trucking, hotels, logging, mining, real property construction activities, repair services, sand and gravel pit operators, raising and breeding of animals, restaurants, and television and radio stations. It is apparent that Bailey-Bohrman's

---

[3] The taxpayer has urged that *Samuels* is on all fours with this case and completely dispositive of the issue here. While the principles of *Samuels* are relevant, the facts are substantially different, and we do not wholly rely on *Samuels* in reaching our conclusions.

operation has little in common with those listed as non-manufacturers. Its operation is much more analogous to those which the Department has heretofore determined to be engaged in manufacturing. The general Administrative Code provision set forth in TAX 11.39 states:

"Manufacturing means an operation at a fixed location complete in itself, or one of a series of operations each at a fixed location, whereby, through the application of machines to tangible personal property by a process popularly regarded as manufacturing, a new article of tangible personal property with a different form, use and name is produced."

On the basis of the facts of record, we conclude that Bailey-Bohrman's operations conform to this guideline and to the definition set forth in sec. 77.51 (27), Stats.

Accordingly, we reverse the judgment of the trial court and remand with directions to reinstate the order of the Wisconsin Tax Appeals Commission.

*By the Court.*—Judgment reversed and cause remanded with directions.

ABRAHAMSON, J., took no part.