Wisconsin DEPARTMENT OF REVENUE,
Petitioner-Respondent and Cross-Appellant,

v.

MILWAUKEE BREWERS BASEBALL CLUB, Appellant
and Cross-Respondent-Petitioner.

Supreme Court

*No. 81–1875. Argued February 28, 1983.—Decided March 29, 1983.*

(Also reported in 331 N.W.2d 383.)

For the petitioner there was a brief by *Ronald L. Walter, David A. Baker* and *Foley & Lardner,* Milwaukee, and oral argument by *Mr. Walter.*

For the respondent and cross-appellant the cause was argued by *John J. Glinski,* assistant attorney general, with whom on the briefs (in court of appeals) was *Bronson C. La Follette,* attorney general.

LOUIS J. CECI, J.   The issue presented is whether the use tax is properly assessed on the value of promotional items and admission tickets that are acquired by the taxpayer and transferred to its customers in connection with attending baseball games. The tax appeals commission held that the use tax did not apply to either item. The circuit court affirmed with respect to the admission tickets, but reversed on the issue of the promotional items, holding that they were subject to the use tax. The court of appeals ruled in favor of the assessment for both the tickets and the promotional items.[1] Because we conclude that, under the statutory framework of ch. 77, the sale of the tickets and promotional items by the out-of-state vendors to the Brewers consti-

[1] *Revenue Dept. v. Milwaukee Brewers,* 108 Wis. 2d 553, 322 N.W.2d 528 (Ct. App. 1982).

tuted a taxable "sale" under sec. 77.51(4), Stats.,[2] we affirm.

The pertinent facts in this case are not in dispute. The taxpayer, the Milwaukee Brewers Baseball Club, is a limited partnership engaged in the ownership and operation of a professional baseball franchise. The Milwaukee Brewers are a member team of the American League and play a schedule consisting of approximately 162 games during the regular baseball season. The baseball games played by the Brewers in Wisconsin (their "home games") are played at Milwaukee County Stadium. The remaining games are played outside Wisconsin against American League member teams located in various states. During the regular season, the Brewers have 81 home games for which they sell admission tickets on both a season ticket and an individual game basis.

During its fiscal years ending October 31 in 1971 through 1975, and between November 1 through December 31, 1975, the club purchased promotional items, such as baseball bats, helmets, jackets and seat cushions from out-of-state vendors for about $243,000. It transferred the promotional items to certain customers, for example, to children age fourteen and under, at some home baseball games.

---

[2] Section 77.51(4), Stats 1975, provides:

"77.51 **Definitions.** Except where the context requires otherwise, the definitions given in this section govern the construction of terms in this subchapter.

". . .

"(4) 'Sale', 'sale, lease or rental', 'retail sale', 'sale at retail', or equivalent terms include any one or all of the following: the transfer of the ownership of, title to, possession of, or enjoyment of tangible personal property or services for use or consumption but not for resale as tangible personal property or services and includes: . . ."

While the 1975 statutes are referred to in this opinion, the current language in all sections cited is substantially the same.

During the same periods, the club also purchased printed tickets from out-of-state vendors for use in selling admissions to its Milwaukee games. The tickets cost the club approximately $108,000 at a unit cost of approximately one cent each.

The Brewers filed Wisconsin sales and use tax returns for each of the periods in question. As a result of a field audit of the books and records of the club, the department of revenue issued a notice of sales and use tax deficiency determination dated March 24, 1976. The notice stated that total additional sales and use taxes and interest in the amount of $27,367.96 were due. The Brewers filed a petition for redetermination of the assessment. On September 24, 1976, the club's petition for redetermination was granted in part and denied in part by the department.

In its final determination, the department increased the club's use tax base by $107,979, which represented amounts paid by the club during the periods in issue to an out-of-state vendor for the purchase of the admission tickets.[3] The department also increased the use tax base by $242,540 for amounts paid by the Brewers to various out-of-state vendors for the different types of promotional items.[4]

The Brewers appealed the additional assessment to the Wisconsin Tax Appeals Commission. In an October 27,

[3] The department later agreed that $12,705 of this amount was attributable to periods prior to March 24, 1972, and was not properly assessable under sec. 77.59(3), Stats. 1973.

[4] The department later agreed that $70,209 of this amount was not properly assessable, because it was attributable to periods prior to March 24, 1972. Section 77.59(3), Stats. 1973.

The department also increased the use tax base by $6,886 for amounts paid by the club to various out-of-state vendors for uniforms used by the Brewers for road games. The purchase of the uniforms is not an issue on this review, since the parties ultimately stipulated that the assessment was improper, and it was withdrawn.

1980, decision, the commission reversed the action of the department and ruled that the Brewers' acquisition of the tickets and the promotional items were not taxable events. The commission concluded that the acquisition of the admission tickets by the club did not constitute retail sales within the meaning of sec. 77.51(4), Stats., reasoning that the costs of the admission tickets were already subject to the sales tax on the price of admission to a game. The commission similarly concluded that the promotional items were not acquired in separate retail sales within the meaning of sec. 77.51(4), Stats., since the items were included in the price of admission on which a sales tax was paid.

The department then sought judicial review of the commission's decision in the Dane county circuit court. The court affirmed with respect to the cost of the tickets and reversed with respect to the cost of the promotional items. The circuit court reasoned that the ticket was the permission to enter the stadium and is what the customer paid for; thus, it had been taxed under sec. 77.52(2), Stats.[5] However, the court held that while the transfer

---

[5] Section 77.52(2)(a)2, Stats. 1975, provides:

"77.52 **Imposition of retail sales tax.** . . .

"(2) For the privilege of selling, performing or furnishing the services herein described at retail in this state to consumers or users, a tax is hereby levied and imposed upon all persons selling, performing, or furnishing such services at the rate of 3% of the gross receipts from the sale, performance, or furnishing of such services on or after February 1, 1962; but beginning on September 1, 1969 the rate of the tax hereby imposed shall be 4%.

"(a) The tax imposed herein applies to the following types of services: . . .

"2. The sale of admissions to places of amusement, athletic entertainment or recreational events or places, the sale, rental or use of regular bingo cards, extra regular cards, special bingo cards and the sale of bingo supplies to players and the furnishing, for dues, fees or other considerations, the privilege of access to clubs or the privilege of having access to or the use of amusement, entertainment, athletic or recreational devices or facilities."

of a promotional item may be an inducement for the purchase of the service (admission to the event), it is not a sale or part of the sale recognized by sec. 77.52(2)(a)2, Stats. Therefore, the court considered the distribution of the promotional items to be taxable to the Brewers under sec. 77.51(4)(k), Stats.[6]

The court of appeals reversed on the issue of the tickets. The court held that sec. 77.51(24), Stats.,[7] precluded the Brewers from allocating any part of the admission price to either the tickets or the promotional items. The court of appeals reasoned that

"a person who acquires property to give it away is a user or consumer as opposed to a reseller, and is liable for the use tax." 108 Wis. 2d at 558.

## I.

### PROMOTIONAL ITEMS

We agree with the court of appeals that the promotional items were not for resale and that, therefore, their acquisition by the Brewers was a taxable event. Our conclusion is based on what we believe to be the clear language contained in the statutory framework of ch. 77.

As we have previously noted, the facts in this case are not in dispute, and only questions of law remain.

---

[6] Section 77.51(4)(k), Stats. 1975, provides:

"(k) Any sale of tangible personal property to a purchaser even though such property may be used or consumed by some other person to whom such purchaser transfers the tangible personal property without valuable consideration, such as gifts, and advertising specialties distributed gratis apart from the sale of other tangible personal property or service."

[7] Section 77.51(24), Stats. 1975, provides:

"(24) With respect to the services covered by s. 77.52(2), no part of the charge for the service may be deemed a sale or rental of tangible personal property."

Questions of law such as statutory construction are reviewable *ab initio* by this court and are properly subject to judicial substitution of judgment. *American Motors Corp. v. ILHR Dept.,* 101 Wis. 2d 337, 353–54, 305 N.W. 2d 62 (1981) ; *H. Samuels Co. v. Dept. of Revenue,* 70 Wis. 2d 1076, 1083–84, 236 N.W.2d 250 (1975).

Several statutory sections are pertinent to the question of taxability of tangible property purchased from an out-of-state retailer. Section 77.51(7)(a), Stats. 1975, defines "retailer" as including "[e]very seller who makes any sale of tangible personal property or taxable service." Under sec. 77.51(4), Stats. 1975, "sale" is defined as including the "enjoyment of tangible personal property or services for use or consumption but not for resale. . . ." Section 77.53(2), Stats. 1975, provides that any person storing, using or otherwise consuming tangible personal property purchased from a retailer is liable for the tax imposed. "The purpose of the use tax is to prevent a buyer from avoiding a sales tax by purchasing goods outside the state." *Dept. of Revenue v. Moebius Printing Co.,* 89 Wis. 2d 610, 621–22, 279 N.W.2d 213 (1979).

The Brewers argue that because the promotional items are tied to the price of admission, they are being sold at the retail level and are, therefore, already subject to the sales tax. The problem with this argument is that the price of admission to athletic events is taxed as a service under sec. 77.52(2)(a)2, Stats., and that sec. 77.51(24), Stats. 1975, provides:

"With respect to the services covered by s. 77.52(2), no part of the charge for the service may be deemed a sale or rental of tangible personal property."

We agree with the court of appeals that the plain meaning of this provision is that under ch. 77, no part of the

Brewers' admission charge is allocable to a sale of the promotional items. Thus, no resale occurs when the item is transferred to the game patron. 108 Wis. 2d at 557.

The Brewers contend that sec. 77.51(4)(k), Stats., is controlling and that a logical interpretation of its language excludes the Brewers' acquisitions from the definition of a "retail sale." Section 77.51(4)(k), Stats. 1975, provides that the following will qualify as a "retail sale," for use or consumption but not for resale:

> "Any sale of tangible personal property to a purchaser even though such property may be used or consumed by some other person to whom such purchaser transfers the tangible personal property without valuable consideration, such as gifts, and advertising specialties *distributed gratis apart from the sale of other* tangible personal property or *service."* (Emphasis added.)

The club argues that this section deals specifically with the question of true "giveaways" by a retailer, such as matches, calendars, pens or athletic schedules which are given for the asking, unrelated to a particular sale. From this, the club argues that the acquisition of a product for transfer in conjunction with the sale of another product or service does not constitute a retail sale. We agree with the court of appeals that this claimed negative implication does not exist. Rather, sub. (4)(k) clarifies that "a person who acquires property to give it away is a user or consumer as opposed to a reseller, and is liable for the use tax." 108 Wis. 2d at 558.

The Brewers contend that the court of appeals' holding is inconsistent with the department's interpretation of sec. 77.51(4)(k), Stats., as enunciated in a department Technical Information Memorandum S–52.1 (TIM), which states in part:

"1.  *Gifts and Advertising Specialties*

Persons who make gifts of personal property to others are the consumers of the property and the tax applies to the sale of the property to such persons. This would include sales of samples, advertising material, display cases, racks and other similar marketing aids to manufacturers, distributors, jobbers, and wholesalers acquiring such property to give the items to retailers for use in selling merchandise to customers. For example, a paint manufacturer is the consumer of color cards which it provides to retailers without charge to facilitate the sale of the manufacturer's paint. A tavern operator is also liable for the tax measured by the purchase price to him of the liquor he gives away to customers as free drinks. Samples furnished to doctors by drug manufacturers are self-consumed by the manufacturer, and the use tax applies to the cost of the ingredients. When merchandise purchased for resale is used for any purpose other than resale, such as giving it away to customers or to a charity, the user becomes liable for the use tax based on the cost of the merchandise to the user.

" . . .

"2.  *Coupons and Premiums*

" . . .

"(c)  *Coupons issued and redeemable by retailers:*

" . . .

"(3) The retailer may purchase by use of a resale certificate tangible personal property which is to be given as a premium to the retailer's customer when that customer purchases another product which is subject to the sales tax. This type of transaction *is deemed a sale of both the premium and the product* so the retailer's supplier may accept a resale certificate when selling such merchandise to the retailer." (Emphasis added.)

The club asserts that admission to a baseball game is a "product" and that the instant case falls within paragraph 2(c)(3) of the TIM. However, the purpose of the TIM is not entirely clear. We are still faced with the question of whether the items were given to the game patrons (¶ 1) or whether two taxable items were sold

to the fan for one flat price (¶ 2 (c) (3) ). We can accept the department's contention that ¶ 2 (c) (3) of TIM S–52.1 applies to situations such as when an appliance retailer, to attract attention, gives a bicycle to every purchaser of a color television set, rather than reducing the price of the television set. In this situation, the customer is buying both the television set and the bicycle. The bicycle was not given away, but was actually resold, as evidenced by the taxable gross receipts from the sale of the tangible property. In contrast, we believe that the items in the case before us were given away by the Brewers and do not constitute a "two-for-one" sale. The fact that the promotional items were given only to fans of a certain age who had to use their tickets to gain admission to the game and who did not pay more than the usual admission charge makes the gratuitous nature of the transfer even more apparent. Moreover, the language of sec. 77.51 (24) prevents admission to a baseball game from being considered to be a "product" as that term is used in ¶ 2 (c) (3) of TIM S–52.1.

The Brewers also contend that the court of appeals' decision is inconsistent with this court's decision in *Dept. of Revenue v. Milwaukee Refining Corp.*, 80 Wis. 2d 44, 257 N.W.2d 855 (1977). In *Milwaukee Refining,* this court held that the sale of gold by the taxpayer to a dentist, for use in repairing patients' teeth, did not constitute a "sale at retail" within the meaning of sec. 77.51 (4), Stats., so as to be subject to the sales tax pursuant to sec. 77.52 (1), Stats. This court explained that for purposes of determining when a taxable event occurs, the statutory phrase " 'use or consumption but not for resale as tangible personal property or services' " could be "understood only as meaning the final and ultimate employment of the property which results in its withdrawal from the marketplace of goods and services." 80 Wis. 2d at 51. We cannot agree with the Brewers that the above-

quoted language requires a different result than that reached by the court of appeals. This court in *Milwaukee Refining* also noted that "the use or consumption must be final in the commercial sense that the property will not be resold to another as tangible property or services." *Id.* This language, we believe, brings us back to the initial question of whether the promotional items and tickets were subsequently resold to the game patrons. As we have previously discussed, the statutory framework of ch. 77 requires our conclusion that the Brewers were the users or consumers of the items and were, therefore, liable for the payment of the use tax.[8]

## II.

## *TICKETS*

The court of appeals rejected the trial court's conclusion that the printed ticket was part of the admission and was already subject to sales tax under sec. 77.52(2), Stats. Our reasons for holding that the cost of the promotional items is subject to the use tax also apply here. While this might at first appear to be a closer question, because of an actual printed ticket's small value, we agree with the following reasoning of the court of appeals:

---

[8] While the court of appeals thought that the club might be correct in its contention that the purpose of sec. 77.51(24), Stats., is to only prevent avoidance of a sales tax on a service rendered in connection with nontaxable personal property, it did not consider this argument, because it concluded that the statutory language was unambiguous as applied to the issue in this case. 108 Wis. 2d at 557. We agree. When the statutory language is clear on its face, a court should not apply rules of statutory construction to ascertain legislative intent; rather, the court must give the language its ordinary and accepted meaning. *State ex rel. Milwaukee County v. WCCJ*, 73 Wis. 2d 237, 241, 243 N.W.2d 485 (1976).

"Despite the apparent identification of an admission ticket with an admission, and the small unit cost, a consistent interpretation of sec. 77.51(24) requires us to assess the use tax against the cost of the tickets. Because a ticket is used by its vendor, as well as its purchaser, to identify its holder as having a right to watch a home game, the club must pay a use tax on the acquisition of the tickets." 108 Wis. 2d at 559.

When the Brewers sold admissions to baseball games, they were not selling tangible personal property made out of cardboard; under sec. 77.52(2), Stats., they were selling a taxable service. The tickets, rather than being admissions, were merely indicia establishing that the holder was entitled to admission to the event. The unsold tickets, after possibly being used for record-keeping purposes, were eventually destroyed by the club.

Finally, with regard to both the tickets and the promotional items, we must reject the club's argument that the assessment of the use tax on the cost of these items results in a double tax. First, we have concluded that under sec. 77.51(24), the cost of these items is not included in the admission price, for tax purposes. Second, "[a]lthough the use and sales taxes are complementary and supplementary, the scope of the use tax is not merely a function of the scope of the sales tax." *Dept. of Revenue v. Moebius Printing*, 89 Wis. 2d at 622. The two are separate taxes, covering different events involving the same kinds of tangible personal property or services. *Id.*

Therefore, we conclude that pursuant to the provisions of ch. 77, Stats., the costs of the Brewers' acquisitions of promotional items and printed tickets from out-of-state vendors are subject to the use tax. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

BEILFUSS, C. J. (concurring and dissenting). I join the majority opinion insofar as it approves the tax on the promotional items. I join the dissent of MR. JUSTICE STEINMETZ insofar as it disapproves the tax on the admission tickets.

STEINMETZ, J. (*dissenting*). I disagree with the rationale and result of the majority. I do agree with the reasoning and result of the Wisconsin Tax Appeals Commission and would hold that the acquisition of the admission tickets by the club did not constitute retail sales within the meaning of sec. 77.51(4), Stats., since the costs of the admission tickets were subject to the sales tax on the price of admission to a game.

In addition, I agree with the commission's conclusion that the "promotional items were not acquired in separate retail sales within the meaning of sec. 77.51(4), Stats., since the items were included in the price of admission on which a sales tax was paid." (*Supra* at p. 575.)

I would therefore reverse the court of appeals.

I am authorized to state that JUSTICE CALLOW joins this dissent. CHIEF JUSTICE BEILFUSS joins the dissent in part.