John A. ANDERSON, Plaintiff-Appellant,†

v.

Wisconsin DEPARTMENT OF REVENUE,
Defendant-Respondent.

Court of Appeals

*No. 91–0167. Submitted on briefs June 17, 1991.—Decided July
2, 1991.*

(Also reported in 473 N.W.2d 520.)

†Petition to review granted.

1015

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael D. Flanagan* of *Foley & Lardner,* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Gerald S. Wilcox,* assistant attorney general, of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.    John Anderson appeals a judgment affirming the Wisconsin Tax Appeals Commission determination that Anderson's income is subject to state income tax. Anderson contends that, although he resides off-reservation in Wisconsin, he is immune from state income tax for his on-reservation employment based on *McClanahan v. State Tax Comm'n,* 411 U.S. 164 (1973). Anderson alternatively contends that state income tax on Indian income from reservation employment is an unreasonable interference with tribal sovereignty and has been preempted by federal law. We conclude that *McClanahan* is inapposite to the issue in this case and that Wisconsin's authority to tax income derived from on-reservation employment of a tribal member who resides off-reservation is neither an unreasonable interference with tribal sovereignty nor preempted by federal law. We therefore affirm the commission's determination.

The relevant undisputed facts are as follows. Anderson is an enrolled member of the Lac Courte Oreilles Band of the Lake Superior Chippewa Indians. The tribe employed him to work on the reservation in various educational activities. Anderson worked as a guidance counselor at the high school, as director of education for the tribe and as a public information officer for the elementary and high schools. Since 1982 he has served as the president of the Lac Courte Oreilles Community College. The elementary school, high school and college are funded primarily by federal sources.

Anderson did not file Wisconsin income tax returns for the calendar years 1980 through 1983. Anderson subsequently filed returns showing his income from off-reservation activities but exempting his on-reservation edu-

cational activities. The commission determined that because Anderson resided off-reservation, his income was subject to state income tax regardless of whether it was derived from on-reservation employment.

This case involves the application of law to undisputed facts. We may therefore substitute our conclusions for those of the Tax Appeals Commission and the trial court. *DOR v. Milwaukee Brewers,* 108 Wis. 2d 553, 556, 322 N.W.2d 528, 529 (Ct. App. 1982), *aff'd,* 111 Wis. 2d 571, 577, 331 N.W.2d 383, 386 (1983). Because the only issue is a legal one and there is no evidence of any special agency expertise or experience and because the weight accorded the commission's determination does not affect the outcome, we give no weight to the agency determination. *See Local No. 695 v. LIRC,* 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990).

Wisconsin is a sovereign state authorized to impose taxes on those domiciled in Wisconsin. *See Lawrence v. State Tax Comm'n,* 286 U.S. 276, 279 (1932). Section 71.02(1), Stats., imposes a personal income tax upon "every natural person residing within the state." It is undisputed that Anderson is a resident of this state living in Hayward, Wisconsin, and is not domiciled on the reservation. Therefore, the clear and unambiguous provisions of the taxing statute apply to Anderson.

Anderson first contends that *McClanahan* precludes Wisconsin from levying a state income tax on a tribal member for work performed on the reservation. We conclude that *McClanahan* is inapposite to the issue before us. In *McClanahan,* the individual lived and worked on the reservation. The Court specifically limited its holding, stating, "this case involves the narrow question whether the State may tax a reservation Indian for

1018

income earned exclusively on the reservation." *Id.* at 168. The Court used the term "reservation Indian" to refer to an Indian living on the reservation, stating, for example, "Congress has consistently acted upon the assumption that the States lacked jurisdiction over Navajos *living on the reservation.*" *Id.* at 175 (emphasis added). Because Anderson lives off-reservation, *McClanahan* does not preclude Wisconsin from taxing Anderson's on-reservation income.

Anderson next argues that Wisconsin's income tax places an impermissible burden on tribal sovereignty. Anderson cites *Williams v. Lee,* 358 U.S. 217 (1959), for the proposition that the state may not act to infringe on the tribe's right to self-governance. Anderson contends that the state may assert its authority only to the point at which state incursion would have an adverse effect on tribal self-government. *See id.* at 220. Anderson maintains that the state income tax on Anderson's on-reservation income makes such an incursion. We disagree.

By imposing state income tax on Anderson, the state is not regulating or controlling Indian education so as to infringe on tribal sovereignty. Wisconsin is simply seeking to tax Anderson as reimbursement for the services rendered to him as a resident of the state. The incidence of this tax falls on Anderson because of his decision to live within the state rather than on the reservation. Anderson's choice of residence, not the nature of his employment, gives rise to his tax liability.

Anderson argues that the ultimate burden of the tax falls upon the tribe because, in order to compensate for the tax burden, the tribe must offer salaries larger than those that it would otherwise offer. Anderson argues that this tax thus restricts the tribe's ability to recruit qualified teachers and increases the tribe's financial burden in

maintaining tribal educational activities. This argument also misses the mark. The state taxes Anderson based on his choice of residence, not from any attempt by the state to regulate tribal educational activities. The state concedes that if Anderson resided on the reservation, *McClanahan* would preclude the state from taxing Anderson's on-reservation income. The tribe's fears of the consequences flowing from the state's imposition of income tax on off-reservation residents working on the reservation is best resolved by tribal employees electing to reside on the reservation.

Anderson argues that *Cotton Petroleum Corp. v. New Mexico,* 490 U.S. 163 (1989), dictates that "[a]ny adverse effect on the Tribe's finances caused by the taxation of a private party contracting with the Tribe would be ground[s] to strike the state tax." However, this quote is taken out of context. In making this statement, the court was referring to what would be the result under the pre-1937 doctrine of intergovernmental tax immunity and, in this regard, stated, "we decline to return to this long-discarded and thoroughly repudiated doctrine." *Id.*

Anderson next argues that a comprehensive federal regulatory scheme governing Indian education has preempted the state's power to tax Anderson's on-reservation income. Anderson relies on *Ramah Navajo School Bd. v. Bureau of Revenue,* 458 U.S. 832 (1982), and *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136 (1980), in making this assertion.

In *Ramah,* the Supreme Court held that federal law preempted New Mexico's tax on the gross receipts paid to a non-Indian contractor hired by the tribe to build a school on the reservation. The construction was federally funded and regulated and subject to the approval of the Bureau of Indian Affairs, and the Navajo school board agreed to reimburse the contractor for all state

taxes, including the gross receipts tax. The gross receipts tax was imposed on the contractor for "the privilege of engaging in business" in New Mexico. *Id.* at 844 (citation omitted).

The Court concluded that the strong federal policy encouraging the development of Indian-controlled educational institutions on the reservation precluded imposition of the gross receipts tax. *Id.* at 839–40. The Court stated that the regulatory scheme governing construction of Indian educational facilities left no room for the additional burden imposed by the state tax. *Id.* at 841–42. The Court noted that the Secretary of the Interior was authorized to enact regulations respecting the construction of tribal educational facilities. These regulations authorized the bureau to monitor subcontracting, architectural and engineering agreements and to conduct on-site inspections. *Id.* at 841. The Court concluded that the tax would necessarily burden the federal interest in promoting Indian education by depleting the funds available for school construction. *Id.* at 842.

In *White Mountain,* the state of Arizona attempted to impose motor vehicle license and use fuel taxes on a logging company's use of roads on the reservation. The Court held that the Arizona taxes were preempted by federal law. The Court noted that the federal government's regulation of the harvesting of Indian timber was comprehensive. *Id.* at 145. The Secretary of the Interior had broad authority over the sale of on-reservation timber. In fact, on-reservation timber could only be sold with the secretary's approval, and the secretary promulgated a detailed set of rules governing the harvest and sale of tribal timber. *Id.* at 146–47. The bureau supervised the harvest and sale of tribal timber under these federal regulations. The Court concluded that the regulations were so pervasive as to preclude the state taxes and

that the taxes would obstruct the federal policies. *Id.* at 148. The Court also noted that the state's interest in raising revenue was weak in that the state provided no service benefitting the tribal roads and that the roads at issue were "built, maintained, and policed exclusively by the Federal Government, the Tribe, and its contractors." *Id.* at 150.

Anderson contends that, as in the above cited cases, four federal statutes preempt state income tax of his on-reservation income.[1] However, the situation in this case is unlike those in *Ramah* and *White Mountain* in two important respects. First, those cases involved the imposition of taxes with the state providing no corresponding benefit to the taxed activity. *See Ramah,* 458 U.S. at 843; *White Mountain,* 448 U.S. at 150. Anderson is taxed because of his domicile in the state. As a resident, he receives the same public benefits, funded by tax dollars, as all state residents. Second, unlike the taxes in *Ramah* and *White Mountain,* the imposition of state income tax on Anderson does not burden the federal programs and policies involved. Anderson, not the tribe, pays the tax and he is subject to the tax only because of his choice of domicile. Because the state could not tax Anderson if he lived on the reservation, the imposition of state tax does not burden the federal programs. We therefore conclude that the commission correctly determined that Anderson was subject to the Wisconsin state income tax.

*By the Court.*—Judgment affirmed.

[1] Indian Self Determination and Education Assistance Act of 1975, 25 U.S.C. § 450 *et seq.;* Tribally Controlled Community College Assistance Act of 1978, 25 U.S.C. § 1801 *et seq.;* Indian Education Act of 1972, 20 U.S.C. § 241aa, 20 U.S.C. § 3285 *et seq.;* and Indian Finance Act of 1974, 25 U.S.C. § 1462.