Wisconsin DEPARTMENT OF REVENUE, Petitioner-Appellant,

v.

PARKS-PIONEER CORPORATION, Respondent-Respondent.†

Court of Appeals

*No. 91–0810. Submitted on briefs October 8, 1991.—Decided June 25, 1992.*

(Also reported in 487 N.W.2d 63.)

† Petition to review denied.

44

For the petitioner-appellant the cause was submitted on the brief of *James E. Doyle,* attorney general, with *Gerald S. Wilcox,* assistant attorney general.

For the respondent-respondent the cause was submitted on the brief of *Frederic J. Brouner* and *Margaret Baumgartner* of *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.* of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J. The Wisconsin Tax Appeals Commission reversed a sales and use tax determination by the department of revenue against Parks-Pioneer Corporation. The circuit court agreed with the commission. The department appeals. The issues are whether Parks-Pioneer's machinery and equipment purchases, and its purchase of engine starting fluid, come under the recycling exemption in sec. 77.54(26m), Stats.[1]

---

[1]Section 77.54, Stats., provides in part:

We conclude that the machinery and equipment are not directly used for recycling activities, within the meaning of sec. 77.54(26m), Stats., and are therefore not exempt, and the starting fluid is not machinery, equipment, or parts therefor and is not exempt under that statute. We reverse.

Parks-Pioneer recycles solid waste. It prepares, sorts, weighs and processes scrap metal for use by smelters, foundries and steel mills. In 1984, 1985 and 1986, it purchased lugger boxes and roll-off boxes; tarps and bands to cover the lugger boxes; truck scales, including repair and replacement parts; platform scales; a dead-lift roll-off hoist mounted on one of its trucks; replacement hydraulic hose for its trucks; and starting fluid used to start crane engines on its premises. It paid no sales or use tax on those purchases.

In this state, for the privilege of selling tangible personal property at retail, a tax is imposed on all retailers at the rate of five percent on the gross receipts from the sale. Section 77.52(1), Stats. A tax at the same rate is imposed on the use of the property described in sec.

There are exempted from the taxes imposed by this subchapter:

. . ..

(26m)   The gross receipts from the sale of and the storage, use or other consumption of waste reduction or recycling machinery and equipment, including parts therefor, exclusively and directly used for waste reduction or recycling activities which reduce the amount of solid waste generated, reuse solid waste, recycle solid waste, compost solid waste or recover energy from solid waste. The exemption applies even though an economically useful end product results from the use of the machinery and equipment. For the purposes of this subsection, "solid waste" means garbage, refuse, sludge or other materials or articles, whether these materials or articles are discarded or purchased, including solid, semisolid, liquid or contained gaseous materials or articles resulting from industrial, commercial, mining or agricultural operations or from domestic use or from public service activities.

77.52, Stats. Section 77.53(1), Stats. Section 77.54, Stats., exempts certain transactions from the sales and use tax. The recycling exemption in sec. 77.54(26m), Stats., applies to the gross receipts from the sale and use of "recycling machinery and equipment . . . exclusively and directly used for . . . recycling activities." The department contends that the machinery and equipment at issue are not "exclusively and directly used for" Parks-Pioneer's recycling business, and that the starting fluid is not machinery or equipment and, in any event, the fluid is not used in connection with machinery or equipment coming within the exemption.

The commission's findings of fact are not contested. The commission found that Parks-Pioneer uses the lugger and roll-off boxes solely to collect scrap metal at its suppliers' premises, to transport the scrap to its premises and to deliver recycled metal to its customers. Customer delivery does not exceed ten percent of the total use of the boxes. The record shows that Parks-Pioneer places the boxes at scrap collection sites. It picks up the full boxes, leaves replacement boxes, and transports the scrap metal in the boxes to its premises. Tarps and bands are used solely to cover the boxes to prevent the metal from falling out in transit. Truck and platform scales are used solely to weigh the metal to determine its purchase or sale price. Dead-lift roll-hoists are mounted on trucks and used to lift the boxes onto and off the trucks. Hydraulic hoses are replacement parts for the trucks. Starting fluid is used in cold weather to start engines on cranes Parks-Pioneer has on its premises to move heavy pieces of scrap metal.

The application of a statute to undisputed facts is an issue of law. *DOR v. Bailey-Bohrman Steel Corp.*, 93 Wis. 2d 602, 606, 287 N.W.2d 715, 717 (1980). We must

strictly construe tax exemption statutes against the taxpayer. *Ladish Malting Co. v. DOR,* 98 Wis. 2d 496, 502, 297 N.W.2d 56, 58 (Ct. App. 1980). That the items Parks-Pioneer purchased, except the starting fluid, are machinery and equipment and parts therefor is uncontested. The question is whether they are "exclusively and directly used for . . . recycling activities," within the meaning of the exemption in sec. 77.54(26m), Stats.

The department makes a three-part attack on Parks-Pioneer's claim under the exemption. First, the department contends that the items claimed exempt are not used in a "recycling activity." Second, if the items are used in a "recycling activity," they are neither exclusively nor directly used for that activity. Third, starter fluid is not machinery or equipment or a part therefor.

"Recycling activities" is not defined in ch. 77, Stats. When determining the meaning of a term in a statute, we may refer to standard works, such as dictionaries. *Town of Lafayette v. City of Chippewa Falls,* 70 Wis. 2d 610, 619, 235 N.W.2d 435, 440 (1975). Two dictionary definitions of "activity" are the following: "natural or normal function or operation,"[2] and "[a] specified form of supervised action or field of action."[3] Relying on the latter definition, the trial court concluded that "recycling activities" includes any activity necessary to the process of converting scrap metal into reusable material.

We accept that view of "recycling activities," notwithstanding the department's contention that so broad

---

[2]WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 22 (1976).

[3]AMERICAN HERITAGE DICTIONARY 77 (2nd College Edition 1985).

a definition renders the "exclusively and directly" language meaningless. The "exclusively and directly" language retains its importance despite the broad compass of activities. Machinery or equipment may be necessary to the process of converting scrap metal but not exclusively or directly so used.

We reject the department's argument that since they are used to deliver recycled scrap metal to Parks-Pioneer's customers, the lugger and roll-off boxes are not used "exclusively" for recycling activities. In *Pabst Brewing Co. v. City of Milwaukee*, 125 Wis. 2d 437, 373 N.W.2d 680 (Ct. App. 1985), we construed the property tax exemption in sec. 70.11(27), Stats., applicable to "[m]anufacturing machinery and specific processing equipment, exclusively and directly used by a manufacturer in manufacturing tangible personal property." We held "that 'exclusively' does not have to mean 'solely' or 'purely' but rather 'principally and primarily.' " *Pabst*, 125 Wis. 2d at 448, 373 N.W.2d at 686.

The lugger and roll-off boxes are exclusively used for recycling activities in that they are principally and primarily so used. Because the deliveries are no more than ten percent of the boxes' total use, deliveries are an incidental use and do not violate the exclusivity requirement. *Compare Manitowoc Co. v. City of Sturgeon Bay*, 122 Wis. 2d 406, 414, 362 N.W.2d 432, 437 (Ct. App. 1984) (five percent use of property for nonexempt purpose is incidental to exempt purpose and consistent with exclusivity requirement for property tax exemption in sec. 70.11(27), Stats.).

In *Pabst*, we held that machinery is "directly used" in a manufacturing process if it performs an "integral function" in the process. 125 Wis. 2d at 450, 373 N.W.2d at 687. We held in *Pabst* that bins used to keep barley at a controlled temperature and humidity performed an

"integral function" in the brewing process because the grain underwent an organic change in the bins. *Id.*

But we cannot say that the lugger and roll-off boxes, tarps, bands, hoists, scales and hose perform integral functions in Parks-Pioneer's recycling activities. The scrap is recycled after it is collected and transported to the plant.

■

Section 77.54(5)(c), Stats., supports our conclusion. That statute exempts from the sales tax "[m]otor vehicles which are not required to be licensed for highway use and which are exclusively and directly used *in conjunction with* waste reduction or recycling activities." (Emphasis added.) Section 77.54(5)(c) evinces legislative recognition that motor vehicles used in recycling activities are not "directly" used for recycling activities even if they are "directly used in conjunction with" that activity. Since motor vehicles are not "directly" used for recycling activities, neither is the machinery or equipment utilized with those vehicles, in this case the lugger and roll-off boxes, tarps, bands, hoists, scales and replacement parts for the trucks.

■

Starting fluid is not exempt under sec. 77.54(26m), Stats. Starting fluid is neither machinery nor equipment. We reject the trial court's conclusion that since the fluid is necessary to run the crane it qualifies as a "part" of the crane. Under that reasoning, fuel used as the source of power for a crane would qualify as a part of the crane itself. A "part" of a machine will not last forever but it has an operating life well beyond the time it takes to start a machine.

*By the Court.*—Order reversed.

DYKMAN, J. *(concurring in part; dissenting in part)*. The majority's opinion is contained in one sentence: "The scrap is recycled after it is collected and transported to the plant." Majority op. at 50.

In the view of the majority, recycling is an instantaneous process in which scrap is converted to a "new" item. This narrow view of recycling defeats the legislative intent to make recycling more available and attractive by exempting equipment used in that business from some taxation.

Recycling is not just the act of melting down steel, aluminum or glass. In today's use of the word, recycling begins when an item, formerly discarded, begins a diversion from a landfill to re-use. We are all familiar with the bags and containers used as part of municipal recycling programs. Most people, when they put a can or bottle in an appropriate container, speak of what they are doing as "recycling."

I am not persuaded by the majority's reliance on sec. 77.54(5)(c), Stats. Tax exemptions have little to do with each other. Section 77.54(21), Stats., exempts the gross receipts from caskets and burial vaults. Section 77.54(22)(c), Stats., exempts artificial teeth sold by dentists. Section 77.54(27), Stats., exempts bull semen. Section 77.54(28), Stats., exempts equipment to inject insulin and sec. 77.54(29), Stats., exempts equipment used to produce maple syrup.

The majority comes to the mistaken conclusion that "[s]ince motor vehicles are not 'directly' used for recycling activities, neither is the machinery or equipment utilized with those vehicles. . .." Majority op. at 50. The mistake is assuming that the *same* motor vehicles are involved in both activities. They are not. Section 77.54(5)(c), Stats., pertains to vehicles not licensed for highway use. The majority admits that the lugger and

51

roll-off boxes are used to transport scrap from a supplier's premises to Parks-Pioneer's premises. This can hardly be accomplished by vehicles not licensed for highway use. I do not accept that a statute pertaining to endloaders, bulldozers and cranes is valuable in determining the meaning of sec. 77.54(26), Stats. But I do agree that starting fluid is neither machinery nor equipment. But for this last item, I would affirm the trial court.